OTTO SCHMIDT, Respondent and Appellant, v. JOHN A. STORTZ, Respondent and Appellant.

Kansas City Court of Appeals. January 9, 1922.

1. **UNINCORPORATED ASSOCIATIONS:** Common-Law Company: Trusts: Blue Sky Law: A Common-Law Company Operating under Declaration of Trust Held to be an Unincorporated Association Organized to Sell Shares of Stock within the Terms of Blue Sky Law.

A "Common-Law Company" operating under a declaration of trust under the terms of which neither the trustees nor the shareholders could be held individually liable for the debts of the concern, only its property being liable therefor, *held*, an unincorporated association organized for the purpose of selling shares of stock and to be within the terms of section 11,919, of article 7, chapter 108, Revised Statutes 1919, known as the "Blue Sky Law."

2. ——: ——: Licenses: Evidence Held to Show Plaintiff was Induced to Purchase Stock in a Common-Law Company on Fraudulent Representation that Company had Complied with Blue Sky Law. In a suit to recover money paid for stock in a common-law company, which had not obtained any permit or authority to sell stock as required by the provisions of "Blue Sky Act," under evidence, *held*, that the purchase whereby plaintiff was induced to part with his money, was not for an interest in oil leases, but for stock in said company, which could not be legally issued or transferred and made upon fraudulent representations that the Blue Sky Law had been complied with.

3. ATTACHMENT: Pleading: Allegation that Debt Fraudulently Contracted, Established by Proof that Plaintiff was Induced to Part with his Money on Fraudulent Representations Though There was no Evidence that Defendant Disposed of his Property with Intent to Defraud his Creditors. Where an affidavit for attachment alleged that the "defendant fraudulently contracted the debt sued for," such allegation was established by evidence plaintiff was fraudulently induced to purchase stock in common-law company on false representation that Blue Sky Law had been complied with, even if there was no showing that defendant disposed of his property with intent to hinder, delay and defraud his creditors.

4. FRAUD: A Representation Solely as to a Matter of Law Cannot be Made a Ground of Fraud, but an Untrue Representation that Law had Been Complied with, Held, a Representation of an Existing Fact, Sufficient to Support Recovery. A representation that the organization of a common-law company would protect the stockholders as fully as if regularly incorporated was a representation as to a question of law which could not be made a ground of fraud, but a representation that the law had been complied with in every respect, was a representation of an alleged existing fact which,, if untrue, entitled the purchaser of stock to recover the money paid therefor.

5. ACTION: Money Had and Received: Estoppel: Plaintiff Held not Deprived of Right to Recover Money paid for Stock in Illegal Common-law Company. The fact that plaintiff had doubts about the legality of the organization of the company whereby stockholders would be exempt from individual liability and that he with defend-

Schmidt v. Stortz.

ant induced another to buy stock therein, did not deprive plaintiff of his right to recover in an action for money had and received where defendant obtained the money from plaintiff for which he gave nothing in return, and which he had no right to keep.

6. **BLUE SKY LAW: Police Power: Blue Sky Law is Proper Exercise of State's Police Power.** The Blue Sky Law is a proper exercise of the State's police power.

7. **SALES: Contracts: Purchaser Held not to be in Pari Delicto with Seller and Entitled to Recover Money Paid for Stock Sold in Violation of Blue Sky Law, the Things Done in Part Performance of Illegal Contract being Malum Prohibitum not Malum Per Se..** Where plaintiff purchased stock in an illegal common-law company but after persistent investigations which convinced plaintiff that the organization and sale of stock were illegal, and before consummating illegal contract, abandoned the enterprise and rescinded the contract, thereby preventing the organization from being completed and business carried out in violation of the Blue Sky Law, *held*, plaintiff not *in pari delicto* and entitled to recover of defendant money unjustly received from plaintiff, the things done being *malum prohibitum* not *malum per se*.

Appeal from the Circuit Court of Gasconade County.— *Hon. R. A. Bruer*, Judge.

ON MERITS AFFIRMED, REVERSED AND REMANDED ON ATTACHMENT.

*Robert Walker* and *Jesse H. Shaper*, for appellant.

*A. E. Elliott, Aug. Meyer* and *W. W. Spencer* for respondent.

TRIMBLE, P. J.—The main case herein, the one on the merits, is an action for money had and received, brought by Schmidt against Stortz to recover the sum of $1000 paid by the former to the latter for stock, as he claims, in a company gotten up by Stortz for the purpose of developing certain oil leases on land in Vernon County, Missouri, and more especially to solicit investment in, and to sell, shares of stock in said company. The case ancillary to the aforesaid main case is an attachment suit instituted on the same day, July 24, 1919, and levied upon defendant's interest in a lot

in Hermann, Mo., in aid of the recovery of the money sought in said main case.

Defendant filed a plea in abatement and also an answer to the merits, which last consisted of a general denial. A jury was waived in both cases and the court, sitting as a jury, heard the evidence on both issues and found for defendant on the plea in abatement and dissolved the attachment, but, in the case on the merits, found for plaintiff and rendered judgment in his favor for $1000 with six per cent interest per annum from date of institution of suit.

Each party appealed, plaintiff from the judgment on the plea in abatement, and defendant from the judgment against him on the merits.

Plaintiff is a farmer living in Franklin County, Missouri. He had known defendant when the latter was a young man living at home with his father, some ten or fifteen years prior to the occurrences hereinafter related. Defendant lived in Gasconade County where he was in the automobile business, but about a year prior to the trial, which was in October, 1919, he had left Gasconade County and had gone to Vernon County, and in June, 1919, seems to have been "dabbling in oil" or engaged in selling oil investments. At that time he appears to have had, and doubtless did have, at least there is no evidence to the contrary, certain oil leases on 640 acres in Vernon County, Missouri, and on 40 acres in Washington County, Oklahoma, and was preparing to organize a company for the purpose of selling "shares" (in realty, stock) therein and possibly, if enough "shares" were sold, to develop, or attempt to develop, the leases into oil producing properties. He was intending to form, not a corporation, which would be subject to state laws and regulations, but a "common law company" by having the property conveyed to "trustees" who would in a "Declaration of Trust" agree to manage the property as masters thereof but for the benefit of the persons to whom "shares" should be issued by said trustees.

In the course of his business of selling oil investments, defendant called on plaintiff and after numerous interviews he, on June 30, 1919, succeeded in obtaining from plaintiff the sum of $1000 for which plaintiff was to receive from defendant, when the company should be formed, "stock in said company at the rate of four to one (4 to 1) with a capital not to exceed two hundred thousand dollars."

The company to be so formed was to be known as "The Missouri Oil and Gas Company" and, as stated, was to be a "common law company" operating under a declaration of trust by three trustees of whom plaintiff was to be one. The organization proceeded as far as the conveyance to the trustees of the oil leases and the execution of the declaration of trust by the trustees. By the terms of this declaration of trust neither the trustees nor the shareholders could be held individually liable for the debts of the concern, only its property being liable therefor. The company so formed was an unincorporated association organized for the purpose of selling shares of stock therein as investments in the oil business. Manifestly it was within the terms of section 11,919 of article 7, chapter 108, Revised Statutes 1919, known as the "Blue Sky Law."

Plaintiff had doubts as to the validity of the organization, he at all times preferring and urging that the company be regularly incorporated in the ordinary way. He was not uneasy lest the company could not convey to him the shares he bought; he was fearful lest the shareholders would not be exempt from individual liability under the association formed as it was. But, upon defendant's repeated assurances that he had had the matter thoroughly investigated by the most competent legal authority and that the law was complied with in every way and that there could be no trouble, plaintiff paid his $1000 and agreed to become one of the trustees.

However, his fears continued and he was so urgen* about it that defendant agreed to go with him to Jef-

ferson City and there consult the authorities as to the legality of the organization; and defendant promised plaintiff that if it was not found to be lawful, he would repay plaintiff his money. They went, and were there informed that the proposed scheme was not lawful; that no application had been made for permission to sell stock in said organization and that none would be granted.

Plaintiff thereupon demanded his money back, and defendant agreed to repay him shortly, but afterwards failled to do so, saying he had spent the money some of his other obligations, and finally refused to repay it, intimating that, as plaintiff was in *pari delicto* with him, he could not recover.

After formal demand for a return of the money, suit was brought and an attachment was sued out in aid thereof.

It is contended that plaintiff did not buy any stock in the "common law company" but only a one-tenth interest in the oil leases defendant claimed to own; and, therefore, the sale to plaintiff did not come within the purview of the "Blue Sky Law." But clearly plaintiff did not buy an interest in the oil leases as such. The interest he bought was to be in stock. The property in the oil leases was to belong to the Company and was to be managed by the Trustees and stock was to be issued to the shareholders in the proportion the money they subscribed bore to the capital stock. It seems, though whether plaintiff knew this or not is not absolutely clear, that 4000 shares were to be turned over by the Company to defendant, presumably for the leases, and when enough of these 4000 shares had been sold at $10 per share to give defendant $10,000 in cash, he was to pocket that as his pay for the leases and then whatever money was raised by the further sale of stock was to be used in developing the oil prospects. It is too clear for controversy that what plaintiff bought was stock in the company then being formed, and not a one-tenth interest in the oil leases as such. The trial

court found that the payment of the $1000 was in purchase of stock. The trial court further found that the Missouri Oil and Gas Company was "an unincorporated domestic investment company organized or attempted to be organized, and engaged or attempting to engage, by or on the part of defendant, in the business of selling or negotiating for sale the capital stock of such company to person or persons, including the plaintiff, within the meaning of" the aforesaid Blue Sky Law; and the court further found that "all and singular the acts and proceedings had and done by and on the part of the defendant in the organization of said company and in the business of selling or negotiating for sale the stock of said company to persons, including the plaintiff in Missouri, were without permit and authority . . . and were pursuant to a plan and scheme made by defendant to evade or escape the provision of" said Blue Sky Act "and that plaintiff promptly and in due time rescinded his agreements with defendant for said subscription of shares of stock, before the same was consummated, and prevented the defendant from completing the organization of said company and from carrying out the business."

Hence, it is clear that the purchase, whereby plaintiff was induced to part with his money, was of stock in said company, which could not be issued nor transferred by said company to plaintiff, and that said purchase was made upon the representation of defendant that the law had been complied with in every way, when in truth and in fact it had not been complied with, and never was, and no attempt was ever made to do so.

This, we think, disposes of defendant's contention that no ground for attachment was established. Among the grounds alleged in the affidavit for attachment was the charge that the "defendant fraudulently contracted the debt sued for" and this was established as shown herein above even if, as defendant claims, there was no showing that defendant disposed of his property with intent to hinder, delay and defraud his creditors.

But it is claimed that the representations made to plaintiff were solely in reference to a matter of law, which cannot be made a ground of fraud, since everyone is presumed to know the law, and a statement as to what the law is, is nothing more than a mere matter of opinion; also that they were in regard to matters in the future. Without saying whether or not such matters cannot under any circumstances be interwoven with other matters so as to make the whole constitute a fraud, we may perhaps concede that a representation that the organization of the association as a "common law" company would be as good and would protect the stockholders as fully as if regularly incorporated, was a representation as to a question of law; but a representation that the law had been complied with in every respect was a representation of an alleged existing fact which was not true, since no application had been made for permission to sell stock under any circumstances. The fact that plaintiff had doubts about the legality of the *organization* of the company whereby the stockholders would be exempt from individual liability and that he with defendant also spoke to one of his neighbors whereby the latter also bought some stock as did he, does not deprive plaintiff of his rights herein. This was before the trip to Jefferson City. The truth is, he bought stock in the company and paid his money therefor (which the defendant obtained and pocketed and still keeps), which stock the company could not issue nor exchange for the leases nor sell to plaintiff or anyone else, and which never has been issued or delivered to plaintiff. Under these circumstances defendant has obtained money belonging to plaintiff for which he has given nothing in return, and which he has no right to keep. This creates a proper basis for an action for money had and received.

The arrangement defendant had conceived was, as the court found, "a plan and scheme made by defendant" to evade the provisions of the Blue Sky Law. No question is raised as to the validity of this law. It is a proper exercise of the State's police power. [Hall v. Sioux

Falls Stock Yards Co., 242 U. S. 559; Merrick v. Halsey, 242 U. S. 568.] The acts and contracts made for the purpose of violating that law, and the transactions done in violation thereof were, therefore, null and avoid, since they were illegal. [2 Parsons on Contracts (9 Ed.), star page 746.]

The plaintiff is not to be denied recovery on the ground that he was *in pari delicto*. He was not. The things were *malum prohibitum* not *malum per se,* and what plaintiff did was only in part performance of the illegal contract and he promptly abandoned the enterprise and rescinded the contract before the same was consummated, and it was his persistent investigations that finally led to the conviction that the matters were illegal and thereby prevented the organization from being completed and the business carried out in violation of the laws of the State. Under such circumstances he is not *in pari delicto* and is entitled to recover of defendent what the latter has unjustly received from plaintiff. [Spring Co. v. Knowlton, 103 U. S. 49; 2 Morawitz on Private Corp. (2 Ed.) sec. 721; 2 Parsons on Contracts (9 Ed.), 908-9; Hobbs v. Boatright, 195 Mo. 693.]

For the foregoing reasons we entertain the view that the judgment of the trial court dissolving the attachment on the plea in abatement should be reversed and the cause as to that be remanded with directions to sustain the attachment; and that the judgment for plaintiff on the merits should be affirmed. It is so ordered. All concur.