[Crim. No. 2152. Second Appellate District, Division One.—May 16, 1932.]

THE PEOPLE, Respondent, v. S. B. LESSER, Appellant.

George E. Stoddard for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

TAPPAAN, J., *pro tem.*—The defendant was charged in an information filed by the district attorney with the commission of seven felonies. The first count of the information alleged the crime of grand theft, while the remaining six counts charged defendant with a violation of the Corporate Securities Act, in that he acted as a broker in the sale of stock of the Hollywood Business Properties, a corporation, without being licensed by the commissioner of corporations as a broker. The defendant was found guilty by the jury of the charge of grand theft and on five of the six counts of violation of the Corporate Securities Act. From the judgment entered upon the verdicts and from the order of the court denying defendant's motion for a new trial, defendant appeals.

The evidence, as introduced at the trial, discloses the following facts: The complaining witnesses were mother and daughter residing together. The mother was a woman in her seventies, and the daughter had been a teacher of physical education. The defendant called upon the mother and daughter, ostensibly in reference to certain property owned by the mother in San Deigo County. During the course of the conversation, defendant introduced the subject of the stock of the Hollywood Business Properties, the sale of which stock forms the basis of the charges made against defendant. He at this time stated to the complaining witnesses that this corporation was "one of the most outstanding successes in California, they earned such tremendous dividends, it is impossible to buy any of the stock. . . . It just so happens at the present time that I have $50,000.00 worth, which I am re-selling for a man to whom I sold it originally when the company was organized. . . . I did not come here to sell you any stock, in fact, I am only going to permit my old clients to participate in that." Other like statements were made by defendant at this interview and at the subsequent conversations had with complaining witnesses. The daughter testified that defendant told them that the company was about to sell some of its property for a large sum and that the man for whom he was selling the stock had to sell because of a divorce proceeding. In one instance, the testimony is to the effect that defendant would repurchase one-half of the stock sold when he received his soldier's bonus. At another time, he told the witnesses that he could not make a written agreement to repurchase the stock because he was a broker. Defendant sold stock to the complaining witnesses upon three different dates; the six counts for violation of the Corporate Securities Act involve these sales. The sale on the last date to the mother was for the sum of $2,112.25 and is the basis of the charge of grand theft. The fact of the sale of the stock and that defendant had no license as a broker is not questioned.

The prosecution introduced evidence that defendant had purchased this stock at various times before and after he had his transactions with the complaining witnesses at prices from $5 to $11 per unit. He sold the stock to complaining witnesses for $42.24 to $50 per unit. The corporation went

into the hands of a receiver within a few weeks of the time defendant made the sales complained of here. Defendant denies that he represented himself as a broker in the transaction had and contends that he but sold his own stock.

■ Defendant's first specification of error is as to the charge of grand theft. As to this he contends that the evidence is insufficient to support the finding of the jury, in that it fails to prove that he made any false statement of past or existing fact. An examination of the record fails to sustain defendant in this position. But one instance is necessary to illustrate this. His representation that it was impossible to buy the stock because of its tremendous earnings while at the very time he was in fact purchasing the stock for a price that was less than one-fourth the price at which he was selling it to the complaining witnesses. There is evidence to justify the jury in finding that defendant was acting in bad faith and with knowledge of the untruthfulness of his statements. The statements were more than mere matters of expression of opinion, when considered as a whole. (*People* v. *Jordan,* 66 Cal. 10 [56 Am. Rep. 73, 4 Pac. 773].)

■ Defendant's contention as to the five counts charging him with a violation of the Corporate Securities Act, in that he acted as a broker in the sale forming the basis of the charges, is that the sales were sales of his own stock and that his act in selling such stock was therefore not criminal. The statute, under which defendant was charged in so far as material here, reads as follows (Stats. 1929, p. 1251 et seq.; Deering's Gen. Laws [Supp. 1927–29], p. 3288) :

"10. The word 'broker' includes every person or company, other than an agent, who shall, in this state, engage either wholly or in part in the business of selling, offering for sale, negotiating for the sale of, or otherwise dealing in any security not exempt under the provisions of this act issued by others, or of underwriting any issue of such securities, or of purchasing such securities with the purpose of reselling them, or of offering them for sale to the public.

"11. . . . (c) Except as hereinafter expressly provided, the provisions of this act shall not apply to the sale of any security in any of the following transactions:

"3. The sale in a *bona fide* way of any security by an owner who is not the issuer or an underwriter thereof, who

sells the same for his own account; and not for the purpose of evading the provisions of this act.''

There is no question that an owner of property such as here is involved has a right to make a *bona fide* sale of it for such price as he can obtain in fair barter. (*Ex parte Quarg*, 149 Cal. 79 [117 Am. St. Rep. 115, 9 Ann. Cas. 747, 5 L. R. A. (N. S.) 183, 84 Pac. 766]; *People* v. *Pace*, 73 Cal. App. 548 [238 Pac. 1089]; *Pollak* v. *Staunton*, 210 Cal. 656, 659 [293 Pac. 26].)

The evidence sustains defendant in his contention that he was the owner of the stock involved in the various transactions which form the basis of the charges of violation of the Corporate Securities Act. That he sold the same to the complaining witnesses is also unquestioned. Defendant cites and relies upon the case of *People* v. *Pace, supra,* the facts of which case are very similar to the case at bar. The act at the time the case of *People* v. *Pace, supra,* was decided, contained the following language exempting the owner of securities from the operation of the act: ''Any owner of any security who is not the issuer or underwriter thereof, who sells or exchanges the same for his own account; *provided, that such sale or exchange is not made in the course of re-peated and successive transactions of like or similar char-acter by him.*'' The court held, as to that part of the law as then in effect, which is italicized in the above quotation, that it placed an unconstitutional limitation on an owner's right of property. Counsel for respondent contends, upon this appeal, that as this objectionable part of the act has been omitted from the act as it now reads, after its amend-ment, that the remaining portions are constitutional. With this contention we cannot agree. The case of *People* v. *Pace, supra,* states a principle which has a very much broader ap-plication of constitutional rights than that referred to and commented upon by respondent here. At page 559 the court makes use of the following language which well illustrates this point:

''But nowhere in the authorities sustaining the regulation of the business of brokers do we find authority to sustain the contention made here, that the police power under the guise of general welfare may be invoked to interfere with the sale by an individual of his own property when the ac-quiring and possession of such property is not contrary to

law.'' On page 560 of the opinion, the court quotes the language of *Ex parte Quarg, supra,* as follows:

''The constitutional guaranty securing to every person the right of 'acquiring, possessing and protecting property' refers to the right to acquire and possess the absolute and unqualified title to every species of property recognized by law, with all the rights incidental thereto, and, in connection with the right of personal liberty, it includes the right to dispose of such property in such innocent manner as he pleases, and to sell it for such price as he can obtain in fair barter.''

Though in other jurisdictions, courts have announced rules that may be at variance with the rule established by our courts in this regard, we are bound by the precedent here established. The act under which defendant is charged is one avowedly seeking to regulate the sale of property, and in so far as the regulation takes away the right of the owner to sell his own property, it is void. The fact that the defendant here may have infringed some rights of the complaining witnesses in effecting the sale, may give rise to some other actions on their part, or on the part of the state under some other law, but this does not justify the proceeding here instituted. Under the guise of ''regulation'', a long-established constitutional right, such as is here involved, may not be abridged. The other points raised upon this phase of the appeal are but correlative of the matters we have just discussed, and no good purpose would be subserved by further comment upon them here.

The judgment appealed from as to the charge of grand theft and the order of the court denying defendant's motion for a new trial upon that charge are affirmed. The judgments entered upon the charge of violation of the Corporate Securities Act and the orders denying defendant's motion for a new trial upon such charges are reversed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 28, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1932.