[L. A. No. 14743. In Bank.—October 31, 1935.]

DOMESTIC AND FOREIGN PETROLEUM CO., LTD. (a Corporation), Appellant, v. JAMES I. LONG et al., Respondents.

550

George E. Cryer and R. Alston Jones for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, as *Amici Curiae* on Behalf of Appellant.

Newby & Newby, Earl A. Everett, James I. Long, Robert E. Austin and Charles R. Newby for Respondents.

Pillsbury, Madison & Sutro and Felix T. Smith, as *Amici Curiae* on Behalf of Respondents.

SEAWELL, J.—Plaintiff Domestic and Foreign Petroleum Co., Ltd., appeals from a judgment for defendants in this action for declaratory relief. Said plaintiff is the assignee of an oil and gas lease covering property in Los Angeles County, and is now producing oil from a well on the premises. Its predecessors in the ownership of the leasehold estate assigned percentages of the oil and gas to be produced during the lease without procuring a permit to make such assignments from the commissioner of corporations. The plaintiff was not a party to these transfers, but acquired the leasehold some time after they were completed. It contends that said

transfers were void by reason of having been made without a permit, and that the transferees have no rights in oil produced from the property, or in the proceeds from the sale thereof. The defendants are the owners of the percentage interests transferred by plaintiff's predecessors without a permit. They prayed that the interests held by them be declared valid and binding on plaintiff. The trial court gave judgment for defendants on the theory that in so far as the Corporate Securities Act attempted to require an individual lessee to obtain a permit to make assignments such as those under which defendants claim, it was unconstitutional.

The plaintiff's predecessors in ownership of the oil lease made other transfers under permit from the corporation commissioner. The interests transferred under permit all provided that they should "be subject to a charge of not more than $8.00 per 1/100 undivided interest per month for the maintenance of said well . . . " The assignments executed without a permit contained no such provision. Plaintiff also prayed that in the event the court upheld the validity of the interests transferred without permit, it determine that these interests in the circumstances shown were subject to the same charge as the interests sold under permit. The court ruled against this contention except as to defendants Lewis Chester and Jennie Chester.

Owners of the interests assigned under permit intervened in the action. They prayed that the court adjudge the interests sold without permit to be invalid, on the theory that if they were invalid the percentages represented thereby could be retained or resold by plaintiff subject to a deduction to create a maintenance fund, which would redound to their benefit. The interveners filed a notice of appeal, but did not perfect their appeal by payment of the required fee.

The provisions of the Corporate Securities Act as amended in 1929 apply to the proceeding herein. Section 2 (a) 7 provides: "The word 'security' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in an oil, gas or mining lease . . . any transferable share, investment contract, or beneficial interest in title to property, profits or earnings or any other instrument commonly known as a security." (Stats. 1929, p. 1251.) Section 3 provides that

"no company shall sell . . . or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do". (Stats. 1917, p. 675.) Individuals are brought within this prohibition by section 2 (a) 6, as follows: "The word 'individual' in so far as it is included in the definition of a 'company', includes only persons selling, offering for sale, negotiating for the sale of or taking subscriptions for any security of their own issue." (Stats. 1929, p. 1252; see, also, sec. 2 [a] 3.)

It is settled by our recent decision in *People* v. *Craven*, 219 Cal. 522 [27 Pac. (2d) 906], that oil interests such as those transferred without permit herein are "securities" within the meaning of the act, and that the individual lessee who issues such interests may constitutionally be required to obtain a permit therefor. The application of the Craven case to the present appeal will be apparent from a statement of the facts of the instant case.

On September 24, 1930, Grace Thompson Bysshe, Frank A. Arbuckle and E. Earl Parish by assignment became owners as tenants in common of an oil and gas lease. On September 27, 1930, they entered into a drilling contract with Parnell McDermott, H. R. Aten and Charles D. Tanksley, by which these persons agreed to drill a well in consideration of cash payments of $25,000 and an assignment of an undivided 20/100 or 1/5 interest in all oil, petroleum, gas and other hydrocarbon substances to be produced and saved during the lease from the well drilled by said persons, and 20 per cent of all moneys derived from the sale of such substances. The cash payment was to be raised by the lessees through the sale of oil units. The drilling contract provided that all units retained or sold by the lessees and the 20 per cent assigned to the drillers should "be subject to a maintenance charge of Eight ($8.00) Dollars, which sums shall be used for the maintenance of said Senator Well No. 1, including the payment of taxes". It was not contemplated by this agreement that the drillers should operate the well after bringing it to completion, but only that they should drill it.

The lessees obtained a permit from the corporation commissioner on October 30, 1930, to issue to the drillers twenty 1 per cent interests, as provided in the drilling contract, and to sell to the public twenty-one 1 per cent interests for cash.

These units were issued to the drillers and sold to the public. The interests attacked in this proceeding, for a total of 10½ per cent of the production, were assigned by the lessees without permit as follows:

(1) On or about September 30, 1930, the lessees made five separate transfers of varying percentages, totaling 4½ per cent. The assignment to James I. Long, Jr., was in payment of legal services rendered to the lessees by Nathan Newby, Jr., who directed that the transfer be made to Long. The consideration for the assignments to Henry J. Dike, Frances J. Dike, and L. A. Dickerson was services rendered by Henry J. Dike in procuring the oil leasehold and negotiating the drilling contract. The assignment of a 2 per cent interest to B. Frances Driscoll was for cash.

(2) On or about November 14, 1930, a 2 per cent interest was assigned to defendant E. Earl Parish in consideration of Parish transferring to the other lessees, Arbuckle and Bysshe, and to Morgan J. Quill, his interest in the leasehold estate.

(3) On November 28, 1930, a 4 per cent interest was transferred to Arbuckle in consideration of his surrendering to Bysshe and Quill his interest in the leasehold. Arbuckle, subsequently, on December 1, 1930, assigned 2 per cent to defendant E. Earl Parish, who, in turn, transferred ⅓ of 1 per cent to defendants Lewis Chester and Jennie Chester. On December 2, 1930, Arbuckle transferred the other 2 per cent interest remaining in him to defendants Samuel A. Gaede and Kathryn B. Gaede.

The above assignments made without permit are identical in wording with the instruments executed by the lessees under permit, except that, as noted above, the nonpermit assignments contained no provision for a deduction for maintenance expenses, and with the further exception that the nonpermit assignments grant an undivided interest in all oil and other substances to be produced and saved during the existence of the lease and moneys derived from the sale thereof, while the permit assignments grant an undivided interest in oil and other substances to be produced from Senator Well No. 1 during the lease, and moneys derived from the sale thereof. It does not appear that there is any other well on the property.

■ It is the contention of defendants that the lessees herein did not issue a security, but granted undivided interests in the leasehold estate, which leasehold is an estate in real property, or in the oil to be produced therefrom; that the instruments of transfer are entitled "grant deed", and use the words "grant" and "convey", which are appropriate to a deed rather than to a certificate of interest or a security.

The contention that the interests are not securities is fully answered by our decision in *People* v. *Craven, supra.* (See notes, 23 Cal. Law Rev. 353; 22 Cal. Law Rev. 341.) It is urged that the Craven case merely determined the constitutionality of legislation which required the issuer of "certificates of interest in an oil lease" to procure a permit, without deciding that the instruments were such a security within the act, for the reason that a stipulation was made in the form of the statute that the defendant therein sold certificates of interest in an oil and gas lease. The force of our decision cannot be thus avoided. The court could scarcely consider whether the act was constitutional in so far as it required the individual issuer of a "certificate of interest in an oil lease" to procure a permit without considering the nature of the instruments or assignments embraced within the definition of that term. After quoting the definition of security contained in the acts of 1929 and 1925, the opinion squarely states: "Under either of these provisions of the statute, there can be no question but that the certificates of interest sold by defendant were securities." The court further holds: "Under these sections of the act [sec. 3, Stats. 1917, p. 673; sec. 2 [a] 6, 7 and 3, Stats. 1929, p. 1251] it is clear that an individual, as well as a company or corporation, is prohibited from selling or negotiating for the sale of any security of his own issue. The evidence in the case clearly shows that the certificates of interest in the leases which were sold by defendant were of his own issue, he having *executed* and *delivered* said certificates as completely as a corporation would issue its shares of stock." (219 Cal. 522, 524, 525 [27 Pac. (2d) 906]. For definition of word "issue" see *Blythe* v. *Doheny*, 73 Fed. (2d) 799, 803.)

The decision fully sustains the constitutionality of the provisions of the Corporate Securities Act which require an individual to obtain a permit to issue securities as applied to an individual oil lessee who assigns oil interests such as those

in the Craven case and in the case now before us. The court distinguishes *People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089], and *People* v. *Lesser,* 123 Cal. App. 489 [11 Pac. (2d) 668]. Those cases involved sales of personally owned securities by an individual owner who was not the issuer or underwriter. Sections 2 (c) 3 and 2 (a) 10 (Stats. 1929, p. 1254) recognize the rule of *People* v. *Pace, supra.* Our decision in *People* v. *Craven, supra,* further points out that when the facts upon which *Buttrick* v. *Seines,* 209 Cal. 567 [289 Pac. 616], arose, an individual issuer of securities was not required to obtain a permit by the provisions of the act.

The assignments to defendants in the instant case of percentages of oil and other substances to be produced during the lease, and money to be derived from the sale thereof, were not bare assignments of an undivided interest in the leasehold estate. It was not contemplated that the lessees and their assignees should be mere tenants in common in the rights conferred by the lease—that is, the right to go upon the land and drill for and produce oil. Both the permit and the nonpermit assignments expressly provided that the grantors or such persons as they might designate should be the *only* persons authorized to drill for or produce oil, and that the grantees should "not have any voice concerning said operations". Instruments such as those in the Craven case and the instant case are not issued to persons who expect to reap a profit from their own services and efforts exerted in the management and operation of oil-bearing property, but to those in the category of investors, who, for a consideration paid, stipulate for a right to share in the profits or proceeds of a business enterprise or venture to be conducted by others. The defendants herein have less voice in the control of the enterprise than stockholders in a corporation, who may vote at stockholders' meetings.

In decisions in this state and in other jurisdictions where it has been contended that a transaction under attack did not come within the Corporate Securities Act because it constituted only a sale of specific real or personal property or an interest therein, the courts have looked through form to substance and found that in fact the transaction contemplated the conduct of a business enterprise by others than the purchasers, in the profits or proceeds of which the purchasers were to share. (*People* v. *Claggett,* 130 Cal. App. 141 [19

Pac. (2d) 805]; *People* v. *Shafer,* 130 Cal. App. 74 [19 Pac. (2d) 861]; *Gracchi* v. *Friedlander,* 93 Cal. App. 770 [270 Pac. 235]; *People* v. *McCalla,* 63 Cal. App. 783 [220 Pac. 436]; *O'Connell* v. *Union Drilling Co.,* 121 Cal. App. 302 [8 Pac. (2d) 867]; *Black* v. *Solano Co.,* 114 Cal. App. 170 [299 Pac. 843]. Cases from other jurisdictions: *Cecil B. De Mille Productions* v. *Woolery,* 61 Fed. (2d) 45; *State* v. *Nordstrom,* 169 Minn. 214 [210 N. W. 1001]; *Schmidt* v. *Stortz,* 208 Mo. App. 439 [236 S. W. 694]; *State of North Carolina* v. *Heath,* 199 N. C. 135 [153 S. E. 855, 87 A. L. R. 37], with comprehensive note on Blue Sky Laws at page 42; *Kerst* v. *Nelson,* 171 Minn. 191 [213 N. W. 904, 54 A. L. R. 495]; *State of Minnesota* v. *Swenson,* 172 Minn. 277 [215 N. W. 177, 54 A. L. R. 490]; *State* v. *Robbins,* 185 Minn. 202 [240 N. W. 456]; *Prohaska* v. *Hemmer-Miller Development Co.,* 256 Ill. App. 331; such interests are generally declared to be investment contracts, which are included in the definition of "security" in the Blue Sky Law of this and other states, and may also be "certificates of interest or participation", or "certificates of interest in a profit sharing agreement" within the act; see, also, *People* v. *White,* 124 Cal. App. 548 [12 Pac. (2d) 1078]; *People* v. *Oliver,* 102 Cal. App. 29, 36, 40 [282 Pac. 813]; *People* v. *Leach,* 106 Cal. App. 442, 448, 449, 450 [290 Pac. 131]; on the other hand, see *People* v. *Steele,* 2 Cal. App. (2d) 370 [36 Pac. (2d) 40], where the enterprise was to be conducted by the investor himself, and the instrument was held not to be a security.)

Indeed, in the absence of any specific provision in the Corporate Securities Act expressly bringing oil interests within the definition of "security", the individual owners of an oil lease who, as in the instant case, transfer to others the right to participate in the proceeds from an oil production enterprise to be conducted by the lessees, create an investment contract, or certificate of interest or participation, as those terms are defined and explained in the cases cited in the above paragraph. The specific reference in the definition of "security" as it stood at the time of the transactions herein to "certificate of interest in an oil, gas or mining lease", and in the act as it now reads to "certificate of interest in an oil, gas or mining title or lease", may seem to bring within the definition instruments besides those which represent a right to share in the proceeds of an oil production enterprise to be conducted

by others. Whether the terms have this effect, and any questions as to constitutionality which may be involved, we need not decide herein. Instruments of the class involved in the instant case are "securities" under the law.

Defendants further contend that if it may be held that the instruments constitute "securities" under the act, nevertheless the lessees herein were not "issuers" of securities, for the reason that the term "issue" contemplates a series of units offered to the public. In *People* v. *Craven, supra,* the evidence showed that the interests were offered to the public and sales made in consequence of a public offer. The interests attacked on this appeal were not offered to the public, but created in private transactions. In 1929 instruments formerly included within the definition of "security" only when they were offered to the public (Stats. 1925, p. 963) were listed together with other securities in a single paragraph, section 2 (a) 7, with no specification in said section as to any of the instruments listed requiring an offer to the public. (Stats. 1929, p. 1252.) Section 2 (b) 11, excepts promissory notes not offered to the public, but the act makes no other exception based on absence of a public offer. In *Reno* v. *American Ice Machine Co.,* 72 Cal. App. 409 [237 Pac. 784], it was held prior to 1929 as to corporate stock, defined as a security without reference as to whether it was offered to the public, that a corporation was required to obtain a permit to issue its shares to an employee in a private transaction with him. We are of the view that the elimination of the phrase "offered to the public" as to other securities evinced a legislative intent to define as securities all instruments listed although disposed of in private transactions. The federal Circuit Court of Appeals thus interpreted the act in *Cecil B. De Mille Productions, Inc.,* v. *Woolery, supra,* which involved fractional interests in gross proceeds from oil produced.

It may be ascertained from records of the commissioner of corporations that a large percentage of the applications examined are for closed permits, that is, for permits to issue securities in private transactions. (See article, 18 Cal. Law Rev. 255.) The requirement of an offer to the public is not read into the act through the use of the word "issue". (*Reno* v. *American Ice Machine Co., supra; Michell* v. *Grass Valley Gold Mines Co.,* 206 Cal. 609 [275 Pac. 418].)

The state may control the issuance of securities by corporations under its power to regulate corporations, which exist under charter from the state. Its right to regulate the individual issuer of securities presents a different problem. It is settled by our decisions in *People* v. *Craven, supra,* and *In re Leach,* 215 Cal. 536 [12 Pac. (2d) 3], that the state may require an individual who issues securities to the public to obtain a permit. (See, also, *People* v. *White, supra; People* v. *Oliver, supra.*) We are of the view that the state may also require a permit although the individual proposes to issue securities in private transactions. (*Cecil B. De Mille Productions, Inc.,* v. *Woolery, supra.*) By providing for the investigation of proposed securities before they are issued our legislation aims ''to regulate and control the class and character of securities and investments that might be offered to the public''. (*Hayden Plan Co.* v. *Friedlander,* 97 Cal. App. 12 [275 Pac. 253].) Securities originally issued in *bona fide* private transactions may subsequently be offered to the public. In this state, where the rule of *People* v. *Pace, supra,* prevails, limiting the right of the state to require an individual who is neither the issuer nor underwriter to obtain a permit to sell personally owned securities (2 [c] 3 and 2 [a] 10), it is of special importance that the corporation commissioner should have authority to investigate all securities at the time of their original issuance.

We conclude on this branch of the case that the lessees, predecessors of plaintiff herein, who transferred interests in oil and gas to be produced, aggregating 10½ per cent of the production, without a permit, violated the Corporate Securities Act. Defendants, who are the owners of these interests, nevertheless do not seek to rescind nor to recover damages, but, rather, pray that the court determine the securities to be valid as to them, and binding upon plaintiff as successor in interest of the lessees by whom the securities were issued. In support of the right of the court to make such an adjudication, defendants rely on *Eberhard* v. *Pacific Southwest Loan & Mortgage Corp.,* 215 Cal. 226 [9 Pac. (2d) 302], and several cases following that decision, particularly *Western Oil & Refining Co.* v. *Venago Oil Corp.,* 218 Cal. 733, where we summarize the facts and holding of the Eberhard case as follows, at page 743 [24 Pac. (2d) 971, 88 A. L. R. 1271]:

"In the Eberhard case an action was brought to foreclose a mortgage securing a note held by plaintiffs, which was one of a series of notes secured by mortgage and issued by the mortgagor. In defense of the foreclosure action the corporation mortgagor alleged that the notes and mortgages composing the series were all securities within the language of the Corporate Securities Act, and having been issued and sold without the permit of the corporation commissioner were void, wherefore defendant prayed judgment against plaintiffs declaring that plaintiffs take nothing and that said note and mortgage be declared null and void. In sustaining the judgment of the trial court ordering foreclosure of the mortgage, this court said:

" 'If, however, for the purposes of this opinion, the necessity for a permit be conceded, there is nothing whatsoever to show that plaintiffs are anything more than the innocent victims of appellant, which now seeks to profit by its own deliberate wrong.

" 'The inhibitions of the Corporate Securities Act (Deering's Gen. Laws, Supp. 1929, p. 3287, Act 3814) against sales of securities to the public without permits are meant to protect the public from imposition and deception—not primarily to benefit the seller. The seller and the purchaser are therefore in no sense *in pari delicto* where this provision is violated. The fact that the transaction may be void at the behest of the purchaser, is not to allow a premium for real wrong done by the seller. The fundamental maxim that "no one can take advantage of his own wrong" (sec. 3517, Civ. Code), and other kindred principles, immediately recur to mind.' "

Following this quotation from the Eberhard case, the opinion in *Western Oil & Refining Co.* v. *Venago Oil Corp., supra,* proceeds: "In the Eberhard case the action was brought to foreclose the mortgage securing the note, and not solely to obtain a money judgment for the amount advanced. The action was based, and the judgment awarded, on the terms of the instruments, which it was contended had been issued in violation of the act, rather than on a rescission and disaffirmance of said instruments."

The question left undecided in the Eberhard case as to whether the instruments were securities for which a permit should have been obtained was settled in *People* v. *Leach,* 215

Cal. 536 [12 Pac. (2d) 3], wherein it was held that such instruments were securities.

The holding in the Eberhard case was followed in *Braunstein* v. *Title Guarantee & Trust Co.*, 216 Cal. 780 [17 Pac. (2d) 104], and *Security First National Bank* v. *J. G. Ruddle Properties, Inc.*, 218 Cal. 435 [23 Pac. (2d) 1016], and then in *Western Oil & Refining Co.* v. *Venago Oil Corp., supra,* which is directly in point in the instant case. There, as in the instant case, an individual owner of an oil and gas lease transferred fractional interests in the oil and gas to be produced without a permit. The well proved successful, and the assignees did not desire to rescind or recover damages, but to rely on the assignments to them. Upon the authority of the Eberhard case we upheld the right of the assignees to demand that said assignments be binding upon the lessee and its transferee of the leasehold. We further said at page 745:

"The Corporate Securities Act was designed to protect purchasers from worthless securities. In the case herein the units proved to be valuable notwithstanding they were issued without a permit. If the issuer of securities, or the assignee of his lease with notice, were permitted to defeat the sale of fractional interests of oil and gas to be produced, the anomalous situation would exist that the issuer of fractional interests in oil and gas to be produced who violated the law by failing to procure a permit would be in a better position than the individual who complied with the law. The owner who sold units without a permit would be enabled to retain the entire production of the well and reap a large profit, and this, although the act was enacted for the benefit of purchasers."

All the defendants are entitled to rely on the above principle except defendant E. Earl Parish, who must be held to have been *in pari delicto* with the issuers of the securities. He, together with Arbuckle and Bysshe, the other lessees, on or about September 30, 1930, issued five assignments. On November 14, 1930, he received the assignment of a 2 per cent interest in consideration of his surrender of his interest in the leasehold. Thus, within a short period he appeared as both assignor and assignee. In this situation it must be held in the absence of evidence of special circumstances that in the transaction in which he appeared as assignee he was equally culpable with his assignors. (*Randall* v. *California*

*Land Buyers Syndicate,* 217 Cal. 594 [20 Pac. (2d) 331];
*Michell* v: *Grass Valley Gold Mines Co.,* 206 Cal. 609, 615 [275
Pac. 418].)

■ Arbuckle, another of the joint lessees, was in the same
position as Parish as to the 4 per cent assignment to him on
November 28, 1930. But he has assigned his entire interest
to other persons, a 2 per cent interest to defendants Samuel
A. Gaede and Kathryn B. Gaede, and the other 2 per cent
to defendant E. Earl Parish, who, in turn, assigned ⅓ of 1
per cent to defendants Jennie Chester and Lewis Chester.
Except for the 1⅔ per cent interest retained by Parish, the
interest issued to Arbuckle has now passed into the hands
of persons who were not *in pari delicto* and are not shown
to have had notice of the facts which placed Arbuckle and
Parish *in pari delicto,* and who should be protected under the
rule of *Eberhard* v. *Pacific Southwest Loan & Mortgage Corp.,*
*supra.* The judgment must be reversed in so far as it affirms
the right of Parish to share in the oil produced and proceeds
from the sale thereof.

■ The assignment to Long of September 30th was made
to him at the direction of the attorney who had rendered
services for the lessees and advised them that a permit, in his
opinion, was not required, and in consideration of the services
of said attorney. But there is no showing that Long did not
give value to said attorney or that he had notice of facts which
placed him *in pari delicto.*

Plaintiff and appellant herein has attached to its opening
brief an unverified typewritten statement, wherein it claims
that a municipal court judgment affirmed by the superior
court is *res judicata* in the action herein between plaintiff,
Domestic and Foreign Petroleum Co., Ltd., and ''certain de-
fendants herein, owning more than a majority of the oil
well 'units' involved in this action''. This statement does
not even name those of the defendants herein as to whom it
is claimed that said judgment is *res judicata.* According to
said statement, an action was brought in the municipal court
against the plaintiff herein during the pendency of the instant
action with the purpose of recovering accrued royalties on
the units issued to certain of the defendants herein. The
municipal court judgment, rendered after judgment of the
superior court in the instant case, and in accord with the
theory of the superior court that the Corporate Securities Act

562

did not apply to these units, gave judgment for recovery of accrued royalties. Thereafter, while the appeal from the superior court judgment was pending, an appeal from the municipal court judgment was taken to the superior court.

A different judge heard the appeal than the one who had rendered the judgment in the instant case. The superior court reversed the municipal court and directed entry of judgment for defendant therein, denying the recovery of oil royalties. Clearly a motion for continuance of the municipal court action until final determination on appeal of the superior court action would have been proper. (1 Cal. Jur. 23, 37; *Houghton* v. *Superior Court,* 187 Cal. 661 [203 Pac. 765].)

The judgment in the action commenced in the municipal court became final upon affirmance by the superior court before decision on appeal in the instant case. A final adjudication of an inferior court made within its jurisdiction is binding and conclusive upon a higher court. (*Todhunter* v. *Smith,* 219 Cal. 690 [28 Pac. (2d) 916]; *Wiese* v. *San Francisco Musical Soc.,* 82 Cal. 645 [23 Pac. 212, 7 L. R. A. 577]; 2 Freeman on Judgments, 5th ed., 1336; 15 Cal. Jur. 107.)

Where two actions involving the same issue are pending at the same time, it is not the final judgment in the first suit, but the first final judgment, although it may be rendered in the second suit, that renders the issue *res judicata* in the other court. (*Williams* v. *Southern Pac. Co.,* 54 Cal. App. 571, 576 [202 Pac. 356]; *Hart Steel Co.* v. *Railroad Supply Co.,* 244 U. S. 294 [37 Sup. Ct. 506, 61 L. Ed. 1148]; 2 Freeman on Judgments, 5th ed., p. 1519.) Where the judgment in one suit becomes final through lapse of time or affirmance on appeal while an appeal is still pending in another court from judgment in the other action, the first final judgment may be brought to the attention of the court in which an appeal is still pending and relied on as *res judicata.* (*Hart Steel Co.* v. *Railroad Supply Co., supra.*)

But the plea of *res judicata* is one which in this state may be waived. (15 Cal. Jur., p. 214.) The party intending to rely on the plea must produce evidence of the former adjudication. (15 Cal. Jur., pp. 288 and 292; sec. 1962, subd. 6, Code Civ. Proc.) A former judgment may be proved by introduction of a properly certified copy of the original. (15 Cal. Jur., p. 292; sec. 1905, Code Civ. Proc.) Other parts

of the record, and in some cases evidence *dehors* the record, may be required to establish the scope of the prior adjudication. (15 Cal. Jur., pp. 212, 290.) ▮ No proof of the prior judgment has been made in the instant case. We have only the unverified statement of appellant as to the rendition and effect of the judgment. Furthermore, appellant does not even name the defendants in this action as to whom he contends the prior final judgment is *res judicata*. This court cannot render a certain judgment as to the defendants herein based on this indefinite statement. Appellant must be deemed to have waived the plea.

▮ There remains to be considered the question whether the interests of defendant unit holders are subject to a charge for expenses incurred in operating the well. The units sold under permit from the commissioner of corporations contained a provision that the interests granted should be subject to a charge of not more than $8 per month per one per cent undivided interest for maintenance of the well. This provision was in accord with the contract of September 27, 1930, between the lessees and the drillers, which provided that the one-fifth interest assigned to the drillers and all units retained or sold by the lessees should be subject to such a charge. The permit units also provided that if it should be necessary to electrically dehydrate or otherwise treat the oil to make it marketable the grantee should pay the cost of treating his portion of the oil. But the units issued without permit provided that drilling and producing operations should be carried on without any liability or cost to the grantees, except the proportionate charge to electrically dehydrate or treat the oil.

The effect of the maintenance provision placed in assignments of unit interests was to make the sums payable on account of oil produced and marketed subject to a deduction, the sums thus deducted to constitute a maintenance fund. Thus a fund was provided from the production of the well itself to pay in part at least the cost of its continued operation for the benefit of all interested in its production. Had it been shown that the nonpermit holders received their units with knowledge that a provision for a maintenance deduction should have been placed in the assignments to them to conform to the contract of September 27, 1930, we would consider whether it should not be held on equitable principles that

their units were subject to such a charge. Equity regards as done that which ought to be done. (10 Cal. Jur. 505.) Section 3529 of the Civil Code is a statutory enactment of this maxim. But in the instant case, except as to defendant Parish and defendants Lewis Chester and Jennie Chester, who hold through Parish under an assignment from him which provided for the deduction, there is no showing that any of the defendant nonpermit holders had notice of the contract of September 27, 1930. ▇▇▇ Defendants Samuel A. Gaede and Kathryn B. Gaede had purchased a unit on November 22, 1930, which provided for the charge, but this did not place them on notice that the nonpermit units which provided that drilling and producing operations should be carried on without liability or cost to the grantees, should also have provided for the deduction. ▇▇▇ The conclusion of the trial court that the unit owned by the Chesters is subject to the charge must be affirmed. ▇▇▇ The failure to insert in certain of the assignments a provision for a maintenance deduction was a violation of the agreement for such a deduction contained in the contract of September 27, 1930, subject to which the permit units were assigned. The lessees by reason of their failure to insert such a provision in certain of the assignments cannot enlarge the burden upon the holders of the units which provided for the charge, but the owners of the leasehold must bear the burden resulting from the failure to place such a provision in several of the assignments.

The judgment is affirmed as to all defendants except defendant Parish, who was *in pari delicto*. As to Parish, the judgment is reversed.

Curtis, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.