## CULVER v. COCKBURN.

### No. 10815.

Court of Civil Appeals of Texas. Galveston.
March 30, 1939.

Rehearing Denied April 20, 1939.

Styles & Erickson, of Bay City (C. A. Erickson, of Bay City, of counsel), for appellant.

J. L. Webb, of Houston, and W. E. Davant, of Bay City, for appellee.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the district court of Matagorda County in an action brought by George Cockburn, appellee, against George D. Culver, appellant, for commissions alleged by appellee to be due him from appellant for services performed by him in the sales of certain mineral leases.

Appellee alleged that he was engaged in the business of procuring purchasers and making sales of lands and leases for others; that appellant listed with him for sale the oil and gas leases on two certain tracts of land in Matagorda County, Texas, and promised to pay him 10% of the sales price thereof, when and if the sale was

consummated and the purchase price paid therefor; that in pursuance of said contract, he sold two leases on said land, one to J. M. Finley, Jr., and one to T. Berthelsen; that the consideration therefor had been paid and that he was entitled to commissions therefor in the sum of $2250. Appellant answered by general denial and general demurrer.

The jury found, in answer to three special issues submitted, in substance, that appellant had agreed to pay appellee a commission of 10% to procure a purchaser of oil and gas lease on land belonging to him; that appellee was not the procuring cause of the sale made to J. M. Finley, Jr., but that he was the procuring cause of the lease to T. Berthelsen. Based on the answers to said special issues, the court rendered judgment in favor of appellee and against appellant for the sum of $1500.

Appellant contends that appellee alleged in his petition facts which brought him within the scope of the Securities Act of Texas, and that having failed to secure a permit required under such Act, and having failed to allege and prove that he had such permit, he was not authorized to maintain a suit for or collect commissions on such sale, and that any contract he made with appellant for the sale of said lease and the payment of commissions therefor was invalid. Appellant further contends that the answer of the jury to special issue No. 3, to the effect that appellee was the procuring cause of the sale of said lease to T. Berthelsen, and the judgment of the court based on said answer, are contrary to the law and the evidence.

Article 600a, Vernon's Ann.Civ.St., known as the Securities Act, was passed by the 44th Legislature in 1935. It became effective on May 23, 1935, and repealed the "Blue Sky Law", Articles 579–600, Revised Civil Statutes.

The Securities Act defines the certain terms used therein as follows:

Section 2.(a): "The term 'security' or 'securities' shall include * * * any instrument representing any interest in or under an oil, gas or mining lease, fee or title."

Section 2.(b): "The term 'company' shall include a corporation a * * * company * * *."

Section 2.(c): "The term 'dealer' shall include every person * * * who en-gages in this State, either for all or part of his * * * time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any security or securities within this State."

Section 2.(d): "The term 'salesman' shall include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or deal in any other manner, in securities within this State * * *."

Section 2.(e): "The terms 'sale,' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value. The term 'sale' means and includes contracts and agreements whereby securities are sold * * * for money", etc., and "the term 'sell' means any act by which a sale is made, and the term 'sale' or 'offer for sale' shall include * * * a solicitation of sale, an attempt to sell, or an offer to sell, directly or by an agent * * * or otherwise; * * * provided, however, that nothing herein shall limit or diminish the full meaning of the terms 'sale,' * * * *."

Section 2.(h): " 'Broker' shall mean dealer as herein defined."

Section 3 of said Act provides: "Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act. * * *

"(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings * * *."

Section 12 provides: "Except as provided in Section 3 of this Act, no person, firm, corporation or dealer shall, directly or [indirectly], * * * offer for sale, sell or make a sale of, any securities in this State without first being registered as in this Act provided."

Section 23 provides: "Except with reference to exempt transactions provided for in Section 3 of this Act, it shall be unlawful for any dealer * * * to sell any securities * * * until such dealer shall have been registered or temporary per-

mission obtained as in this Act provided * * *."

Section 35 provides for the payment of certain registration, license, or permit fees, and Section 30 contains the penal provisions Article 1083a, Vernon's Ann.P.C., for violation of the Act.

The record of the facts in this case shows that appellant was the owner of both the fee and the mineral title to the land on which the lease under consideration was made; that appellee's activities as a dealer in oil and gas leases were incidental to his employment by the Cockburn Oil Corporation, and that his employer had no connection therewith; that he had made only two other sales besides the one under consideration; that no certificate or other evidence of ownership of said lease was issued to appellee, and that he was, in fact, not present when the sale of said lease was closed and the lease delivered to Berthelsen, the purchaser thereof. The jury found that appellee was the procuring cause of the sale of said lease to Berthelsen and that appellant had agreed to pay appellee a commission of 10% of the purchase price thereof. No permit or certificate under the Securities Act was issued to either appellant or appellee.

Under the above facts, we think that appellee was neither a dealer, nor was said lease such a security as to require appellee to secure a permit under said Act in order to contract with appellant for the payment of compensation for his services in procuring a purchaser of the lease under consideration.

Further, in the event appellant is correct in his contention that the oil and gas lease under consideration may be termed a security under the provisions of said Act, we are convinced that the sale of said lease clearly falls under the class of exemptions enumerated in Section 3 of said Act. Appellee's only connection with said sale was that of a go-between in bringing appellant and J. M. Finley, Jr., who was instrumental in closing said sale, together. The sale was closed and the lease was delivered to the purchaser by appellant, the owner of both the fee and the mineral interest in said land.

From the above facts it is our opinion that appellee offered no security to Berthelsen, and the property being a part of the personal holdings of appellant, the transaction falls clearly within Section 3(c) of the Securities Act, which provides that the Act shall not apply to the "sales of securities made by, or in behalf of the vendor in the ordinary course of bona fide personal investment of his personal holdings * * *."

The Securities Act indicates a legislative intent to protect the investing public by providing a more efficient and effective means of preventing fraud in the sale of securities. There is nothing in the subject matter of the Act, however, which would justify the presumption that the Legislature intended to thereby regulate the type of a contract which might be made by the owner of real property with an 'agent for the payment of compensation for procuring a purchaser therefor.

In the instant case, under the findings of the jury, appellant agreed to pay appellee a certain compensation for procuring for him a purchaser of an interest in his personal holdings. The jury found that appellee was the procuring cause of the sale of the lease under consideration. The facts of the record show that appellant had reaped the benefits of said sale, but that he was seeking to avoid payment of the commission for procuring the purchaser for said lease by invoking the provisions of the Securities Act. Under these facts we do not think that a court of equity will permit appellant to be relieved of his obligation to pay appellee the compensation found to be due him.

We have been cited no Texas cases involving an interpretation of the provisions of the Securities Act. We have, however, been referred to a number of cases from other states interpreting the provisions of acts similar to our Securities Act.

The case of People v. Lesser, 123 Cal. App. 489, 11 P.2d 668, holds that the Securities Act does not apply to isolated transactions in which the owner or his representative has sold stock or other securities, and who are neither dealers nor underwriters, and who make sales personally through their agents or other representatives for their own individual accounts.

The courts of Pennsylvania, in interpreting a similar Act, hold in the case of Com. v. Johnson, 89 Pa.Super. 439, that isolated transactions, not made in the course of repeated or successive transactions, or in which the securities were sold by the owner

or his representative, did not come within the purview of the Act.

The case of Buttrick v. Seines, 209 Cal. 567, 289 P. 616, holds that it is no violation of the Securities Act of the State of California for a person, the sole owner of two leases, to sell and transfer a 1-72 interest therein.

Under the facts of this record, we are unable to sustain appellant's contention that the contract made by him with appellee for the payment of compensation for procuring the sale of the lease in question was invalid.

In the case of Sunflower Lumber Company v. Tuner Supply Co., 158 Ala. 191, 48 So. 510, 511, 132 Am.St.Rep. 20, in passing upon the legality of contracts arising out of a sale made by a broker who had not registered, the court said: " 'The tax is not laid upon each sale, but upon the business or calling. The illegality does not attach to the sale, but consists in not paying the tax imposed upon the business.' * * * 'The question in such case is whether the statute was intended as a protection, or merely as a fiscal expedient; whether the Legislature intended to prohibit the act unless done by a qualified person, or merely that every person who did it should pay a license fee. If the latter, then the act is not illegal.' "

4 Ruling Case Law, page 303, lays down this rule: "In passing it should be noted, that in an action for recovery of commissions it is not essential for the broker to allege and prove, in the first instance, that he had a license at the time of the rendition of the services in question. The want of a license is a defense to be pled and proved."

In the case of Smith v. Sharp, 162 Ala. 433, 50 So. 381, 383, 136 Am.St.Rep. 52, the Court says: "A broker employed to sell land is entitled to his compensation if he brings to the seller a purchaser able, ready, and willing to purchase on the terms named, or if he brings them together and the sale is afterwards consummated by the seller himself." The fact that Smith, the agent, had not taken out a license as a broker, did not invalidate his contract.

It is held in 10 Texas Jurisprudence, 510, "that if the legality of a contract does not appear from the contract itself or from the evidence necessary to prove it, but depends upon extraneous facts, the defense of illegality is a new matter, and to be available it must be proved". Mullin v. Nash-El Paso Motor Co., Tex.Civ.App., 250 S.W. 472, writ refused.

■ We are unable to sustain appellant's contention that the court erred in submitting issue No. 3, for the reason that there was no pleading or evidence on which to base such issue. The record discloses that no objections were made by appellant to the submission of said issue. Appellant contends that the entry of judgment thereon was fundamental error.

In the recent case of City of Brownwood v. Anderson, Tex.Civ.App., 92 S.W.2d 325, 328, the court in passing on this question says: "Under the statute a charge to which no objection is made is considered approved. 'It is the intention of a law which is the law; and once truly ascertained, it should prevail, even against the strict letter of the law. The purpose of the act is plain. It is to provide the court, in advance, with the objections to which the charge is deemed subject * * * to secure, as far as possible, the preparation and submission of a correct charge to the jury.' " Walker et al. v. Haley, 110 Tex. 50, 214 S.W. 295.

In the case of Chase Bag Co. v. Longoria, Tex.Civ.App., 45 S.W.2d 242, 245, the court, in passing on the same question, says: "The issue submitted by the court, as above recited, submitted as the measure of appellee's recovery the reasonable cost at Sam Fordyce, Tex., on January 19, 1929, of repairing the damage to his car directly and proximately caused by the collision. Appellant, having failed to present any sufficient objection thereto, is deemed to have acquiesced therein."

Under the state of facts in this record it was proper for the court to render judgment in favor of appellee.

In the case of Edmonson v. Tinsley, Tex.Civ.App., 15 S.W.2d 118, 119, it is said: "Where a broker who has been employed by the owner, brings the owner of property and a purchaser together and a sale or exchange is actually made, though on different terms from those listed with the broker by the owner, he is entitled to his commission if as a matter of fact he produced the purchaser who did actually purchase the property from the owner."

It is held in the case of Settegast v. Timmins, Tex.Civ.App., 6 S.W.2d 425, that an owner making a sale to his broker's

customer, pending the broker's negotiations, must pay the commissions as per the contract.

This record does not disclose such a denial of appellant's rights as was calculated to prevent him from having made a proper presentation of his case on the trial thereof, or such as could have affected the verdict of the jury.

For the reasons above stated, the judgment of the trial court will be in all things affirmed.

Affirmed..