

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
~~VICE VAN EXECUTION~~
ATTORNEY GENERAL

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Dear Sir:                         Attention:  Honorable Frank D. Wear

Opinion No:  0-3366
Re:  Necessity of registration of
     employees of oil companies under
     the Texas Securities Act when
     operating in manner set forth.

      We are pleased to comply with your request of April 1, 1941, for an opinion on the above question, which was submitted to us by letter of the Secretary of State on April 16, 1940, and subsequently withdrawn before release of our opinion. We quote from your letter setting out the questions and facts relating thereto:

      "1.  Is an employee of an oil company who is employed for the purpose of securing oil and gas leases for such company and who is paid by them on a salary basis required to register with the Securities Division of the office of the Secretary of State under the provisions of the Texas Securities Act when he obtains such leases in his own name and later assigns them to the company?

      "2.  Is an employee of an oil company employed by them for the purpose of obtaining leases required to register with the Securities Division of the Office of the Secretary of State when he obtains such leases in his own name and assigns them to the company and is paid for securing such leases a commission based on the number of acres obtained and the price paid for such leases?"

      In connection with these questions you state that:

      "The major oil companies of Texas, such as the Gulf, Magnolia, Sun Oil and others, employ men to represent them in the purchase of oil and

gas leases. In order to prevent information
from reaching the public and other lease buyers
that such major companies are purchasing in a
certain location, these men so employed by such
major companies, purchasing leases, take such
leases in their own name and at a later date
assign them to the company. Some of these men
so employed by the major oil companies are paid
a straight salary by the month or year. Other
men so employed by the major oil companies are
paid on a commission basis of so much per acre
at the time the assignment is made to the
companies."

It is noted at the outset that your question is not concerned with the possible ultimate sale of such oil and gas leases by the oil company employer  or with respect to its duty to register under the Securities Act, but solely with the purchase by the employee of such leases and royalties for the benefit of the company and the subsequent assignment by employee to employer of the leases and royalties. We have carefully considered your inquiry as so qualified and have reached the conclusion that House Bill No. 521, Acts 44th Legislature, 1935, as amended, known and cited as the Texas Securities Act (Article 600a, Vernon's Annotated Civil Statutes), does not apply to transactions in the nature of those set forth.

Section 2 (a)  of the Securities Act defines a "security" to include "a certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title." Under this definition, the ordinary type of oil and gas lease or royalty contract has been held a "security." Atwood v. State, 139 Tex. Cr. R. 43, 121 S. W. (2d) 353.

Section 2 (c) defines a "dealer" as including "every person or company, other than a salesmen, who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any security or securities within this State.

In Section 2 (d) a "salesman" is defined as including "every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or deal in any other manner, in securities within this State, whether by direct act or through subagents; provided, that the officers of a corporation or partners of a partnership shall not be deemed salesmen, where such corporation or partnership is registered as a dealer hereunder."

Section 2 (e) reads as follows:

"The terms 'sale,' or 'offer for sale' or
'sell' shall include every disposition, or attempt
to dispose of a security for value.  The term
'sale' means and includes contracts and agreements
whereby securities are sold, traded or exchanged for
money, property or other thing of value, or any
transfer or agreement to transfer, in trust or
otherwise.  Any security given or delivered with
or as a bonus on account of, any purchase of secur-
ities or other thing of value, shall be conclu-
sively presumed to constitute a part of the sub-
ject of such purchase and to have been sold for value.
The term 'sell' means any act by which a sale is
made, and the term 'sale' or 'offer for sale' shall
include a subscription, an option for sale, a
solicitation of sale, an attempt to sell, or an
offer to sell, directly or by an agent or salesman,
by a circular, letter, or advertisement or other-
wise, including the deposit in a United States
Post Office or mail box or in any manner in the
United States mails within this State of a letter,
circular or other advertising matter; provided,
however, that nothing herein shall limit or diminish
the full meaning of the terms 'sale,' 'sell' or
'offer for sale' as used by or accepted in courts
of law or equity.  Provided, further, that the
sale of a security under conditions which entitle
the purchaser or subsequent holder to exchange
the same for, or to purchase some other security
shall not be deemed a sale or offer for sale of
such other security; but no exchange for or sale
of such other security shall ever be made unless
and until the sale thereof shall have been first
authorized in Texas under this Act, if not exempt
hereunder, or by other provisions of law."

Section 12 of the Act provides that:

"Except as provided in Section 3 of this
Act, no person, firm, corporation or dealer shall,
directly or through agents or salesmen, offer for
sale, sell or make a sale of, any securities in
this State without first being registered as in
this Act provided.  No salesman or agent shall,
in behalf of any dealer, sell, offer for sale, or
make sale of, any securities within this State
unless registered as a salesman or agent of a
registered dealer under the provisions of this

Act.  A list of dealers, agents and salesmen
registered under the provisions of this Act shall,
at all times, be kept by the Secretary of State
and be open to the public."

Other sections of the Act provide methods of registration for dealers, salesmen and issuers of securities, and Section 23 makes it unlawful for any dealer, agent or salesman "to sell any securities" until the dealer has been registered, temporarily or permanently.

Section 30 (Article 1083a, Vernon's Annotated Penal Code) of the Act is its penal provision, providing:

"Any dealer, agent, salesman, principal,
officer, or employee, who shall, within this
State, sell, offer for sale or delivery, solicit
subscriptions to or orders for, dispose of, in-
vite offers for, or who shall deal in any other
manner in any security or securities, without
being registered as in this Act provided, or who
shall within this State, sell, offer for sale
or delivery, solicit  subscriptions to and
orders for, dispose of, invite orders  for, or
who shall deal in any other manner in any
security or securities issued after the effective
date of this Act without having secured a permit
as herein provided, or who knowingly makes any
false statement of fact in any statement or
matter of information required by this Act to
be filed with the Secretary of State, or in any
advertisement, prospectus, letter, telegram,
circular, or any other document containing an
offer to sell or dispose of, or in or by verbal
or written solicitation to purchase, or in any
commendatory matter concerning any securities,
with intent to aid in the disposal or purchase
of the same, or who knowingly makes any false
statement or representation concerning any
registration made under the provisions of this
Act, or who is guilty of any fraud or fraudu-
lent practice in the sale of, offering for
sale or delivery of, invitation of offers for,
or dealing in any other manner in any security
or securities, or who shall knowingly partici-
pate in declaring, issuing or paying any cash
divided by or for any person or company out
of any funds other than the actual earning of
such person or company or from the lawful
liquidation of the business thereof, shall be

deemed guilty of a felony and, upon conviction
thereof, shall be sentenced to pay a fine of
not more than One Thousand Dollars ($1000), or
imprisoned in the penitentiary for not more than
two (2) years, or by both such fine and impri-
sonment."

From a careful analysis of the Act it is clear that
emphasis has been placed upon "sale," "offer for sale," "ex-
change" or "dealing in securities." There is nothing in the Act
either express or implied to indicate that the Legislature had
in mind a regulation of the purchase as distinguished from the
sale of securities. As stated in Smith v. Fishback ( C. C. A.
1938), 123 S.W. (2d) 771, writ refused:

"The Act makes it the duty of all persons
dealing in securities, good or bad, to first
secure from the Secretary of State a permit be-
fore entering upon the business of 'selling' or
'Exchanging' same for anything of value 'for all
or part of his time' either 'directly or through
an agent' within this State."

And as stated in a passage from the opinion of Kneeland
v. Emerton, 280 Mass. 371, 183 N. E. 155, 87 A.L.R. 1, quoted with
approval in the Fishback case, supra:

"The plaintiff as purchaser in ignorance
of the fact that as to the share of stock sold
him by the defendant there had been failure to
comply with the statute was not in pari delicto
with the defendant. The prohibitions of the
statute did not apply to him at all but only to
the seller. The aim of the statute was to pro-
tect the class to which the plaintiff belongs
against that to which the defendant belongs."

As stated in Culver v. Cockburn (C.C.A. 1939), 127 S.
W. (2d) 328, writ dismissed:

"The Securities Act indicates a legis-
lative intent to protect the investing public
by providing a more efficient and effective
means of preventing fraud in the sale of
securities."

In that case it was held that there was nothing in the
Act which would justify the presumption that the Legislature in-
tended to regulate the type of contract which might be made by
the owner of real property with an agent for the payment of com-

pensation for procuring a purchaser therefor. Likewise, we feel that there is nothing in the Act which would justify the presumption that the Legislature intended to regulate the purchase of oil and gas leases by individual oil company principals through agents.

Let us examine more minutely the transactions described in your letter. A person is employed as an agent by an oil company to purchase oil and gas leases and royalties on its account. The oil company remains an undisclosed principal throughout the transaction. When the lease is purchased it is taken in the name of the agent. No violation of the Securities Act has occurred at this point. Yet we assume that company funds have been used by the agent in the procurement of the lease and equitable title to the property in question is in the oil company. Subsequently, in accordance with the terms of his employment the agent transfers legal title to the company by an assignment of the lease.

If the prohibitions of the Securities Act were not intended to apply to the purchasers, can it be that the Act was nevertheless intended to apply to an assignment by the agent to his principal in accordance with the terms of his employment? As so construed the only safeguard afforded in such instances would be protection to principals against the likelihood of unscrupulous acts by their agents. We hardly believe that this was the intent of the Legislature.

Nor can the act of the agent in assigning the lease or royalty to his company properly be classed as a "sale" as that term is defined in Section 2 (e) of the Act. There has been no transfer for value.

Consequently, it is the opinion of this department and you are respectfully advised that an employee of an oil company (paid either on a salary or commission basis) whose duty it is to secure oil and gas leases and royalties in his own name and later assign them to his employer is not required to register under the Securities Act either as a dealer or salesman in the consummation of such transactions.

JDS:RS:wc

APPROVED APR 10, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee by
s/BWB Chairman

Very truly yours
ATTORNEY GENERAL OF TEXAS

By s/James D. Smullen
        James D. Smullen
        Assistant