[Crim. No. 2145. Second Appellate District, Division Two.—June 28, 1932.]

THE PEOPLE, Respondent, v. FRED G. WHITE, Appellant.

H. A. I. Wolch for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

FRICKE, J., *pro tem.*—Defendant was charged by information under counts I, III, V, VII, IX, XI and XIII with the crime of grand theft, it being alleged as to the first four of these counts that the money in question was obtained from one Evalena Michael, as to the next two of said counts that the money was obtained from one Lillian Leonard and as to the last of said counts that the money was obtained from one Bonnie Lloyd. The acts constituting the theft charges were also made the basis of seven counts, bearing even numbers, charging the selling of securities without a permit from the Commissioner of Corporations, in violation of the Corporate Securities Act. He was found guilty by the verdict of the jury of all of the offenses charged except that contained in count VIII.

The evidence discloses that appellant was doing business under the fictitious name of Pacific Loan & Investment Company and that he induced the complaining witnesses and others to invest money with him by representations that his business was producing a tremendous profit through the buying of trust deeds, bankrupt stocks and foreclosures at a sacrifice and disposing of them to a few big stores and business men in Los Angeles, the stores and men named being among the most prominent of that city. He also represented that he obtained large returns by financing and loaning money to the leading merchants of Los Angeles, the names of these merchants being given in the representations. The agreement given by appellant to the investors was in the form of that delivered to the complainant Evalena Michael, which reads: "This agreement made and entered into this 30th day of October, A. D. 1929, by and between Evalena Michael, 1626 North Harvard, City of Los Angeles, State of

California, hereinafter known as party of the first part, and the Pacific Loan & Investment Company, 761 Roosevelt Building, City of Los Angeles and State of California, hereinafter known as party of the second part, as follows, witnesseth: That said party of the first part has this day delivered to party of second part the sum of $5000 in cash, which is to be used by party of the second part for investment only until the 30th day of October, A. D. 1930. Party of the second part agrees to pay party of the first part the sum of $7,500 on the 30th day of October, 1930, as principal and earnings for the above stated period of time. Witness the hands of the parties hereto in duplicate the day and year first above written.''

Appellant attacks the convictions under the counts charging grand theft upon the ground that, the theft charged being in the nature of the obtaining of money by false pretenses, the evidence fails to show that the complaining witnesses parted with their money by reason of appellant's representations, and that none of appellant's material representations were shown to be false.

Appellant has failed to sustain the latter of these contentions by his brief, and there is ample evidence in the record to show not only the falsity but the materiality of appellant's representations. Not only did the representations relate to past and then existing facts, but there were also coupled therewith statements that the moneys were to be used for specific purposes, shown by the evidence to be nonexistent. The evidence tended to support not only the theory that the money was obtained by false pretenses, but also the theory that the theft was of the variety commonly known as larceny by trick and device. While it is true, as contended, that in a prosecution for the obtaining of property by false pretenses the evidence must show that the complaining witness parted with his property because he relied upon material misrepresentations as to past or present facts, this rule is not the same in cases of larceny by trick and device. In the latter class of theft the owner of property is induced by the trickery, deceit and misrepresentation of the defendant to transfer the possession of his property to the defendant with the intent on the part of the complainant that the property shall be used for a specific purpose or in a particular manner, and without any intent that the title to the property

shall ever vest in the defendant; while the defendant, on the other hand, though declaring it to be his intent and object to use the property for a specific purpose, in fact has no such intent or object, his true intent being to make and use the property as his own as soon as it comes into his possession. This intent of the accused is frequently shown, as it was in the case at bar, by proof that the purported object and purpose to which the money obtained was intended to go by the complainant, had no existence in fact, and that the declarations of the accused that such an object and purpose 'did exist were knowingly false. In the case at bar the money which furnishes the basis of counts I, III and V was paid by the complainant for the purpose of building and selling houses on what are referred to as the Brentwood Green lots, and count VII is based upon an alleged investment pool which defendant claimed he was creating. As to counts IX and XI, it appears that the complaining witness Lillian Leonard had had seven similar transactions within less than eight months prior to those charged, in which she received a profit of ten per cent, and one in which she received a profit of twenty per cent within ninety days, a total profit of $550; that these investments were the result of statements made by Evalena Michael (the complaining witness in the first eight counts and who was employed by appellant to sell these instruments upon a ten per cent commission) in which Mrs. Michael repeated to Mrs. Leonard, under appellant's instructions, the representations as to the character of the investments which appellant had made to her; that all of the transactions were with appellant personally and that a part of her reliance upon appellant was due to what he himself told her, combined with the prior experience of herself and other investors with appellant. Appellant's representations to Mrs. Bonnie Lloyd, the complainant in the last two counts in the information, were among other things to the effect that one of his best customers was one H. C. (name given in full in transcript), and the record amply sustains the conclusion that appellant never had any business transactions with the person named, who is one of Los Angeles' most prominent citizens. Appellant in his testimony claims that he did not refer to this particular individual, but had reference to another man by the same name. Taking the context into consideration, the jury was fully warranted

in the conclusion that appellant's testimony upon this subject was not true and that the representation made to Mrs. Lloyd was false and deceitful.

It also appears that appellant employed salesmen to secure investors and that he told them that he was making commercial loans to the largest department stores in Los Angeles, such as Bullock's, The May Company, Walker's and Robinson's and that he was backed by eight prominent men of Los Angeles (the names of these men appearing in the record); that these salesmen had authority to and did repeat these statements to prospective investors and that the statements were false.

Concretely the record shows that the appellant represented as an existing fact that he was doing an investment business which in fact did not exist, and that he was not making loans to the named department stores nor did he have the backing of the men named. In this light, when appellant received the moneys of the investors, including the complaining witnesses, he received it for a purpose which did not exist and which he knew had no existence. Complainants intended that their moneys should go to the making of investments by a business organization such as was described in the representations, and which organization was backed by the prominent business men named in the representations. There is ample evidence to sustain the conclusion that while they intended to invest their money, they did not intend to pass title to such money to the defendant. The record conclusively shows that appellant, when he received the moneys, could have had no intention of investing them through the medium of an organization such as was described in his representations, for none such existed, but intended to appropriate the moneys to his own use to do with as he personally chose. The convictions under the counts charging grand theft are sustained by evidence showing the appellant guilty of that form of theft known as larceny by trick and device.

Where a person obtains the money or other property of another by trick or device, as by falsely and fraudulently representing that such property when received is to be applied to a described purpose or object when in fact there exists no purpose or object corresponding to that described, and the owner, through such fraud, parts with the possession of his property without intent to part with the

title thereto to the defendant or that it shall go toward any object or purpose other than the described purpose, and the person receiving the property receives it with the intent not of applying it to the purpose or object such as he has described but of using it as he chooses, as if it were his own, the crime of larceny by trick and device, now included in the crime of theft under section 484 of the Penal Code, has been committed. (*People* v. *Edwards,* 72 Cal. App. 102 [236 Pac. 944] ; *People* v. *Robertson,* 26 Cal. App. 507 [147 Pac. 468] ; *People* v. *Frederick Grant White,* 66 Cal. App. 703 [226 Pac. 962] ; *People* v. *Arnold,* 20 Cal. App. 35, 38 [127 Pac. 1060] ; *In re Clark,* 34 Cal. App. 440 [167 Pac. 1143] ; *People* v. *Sichofsky,* 58 Cal. App. 257. [208 Pac. 340] ; *People* v. *Solomon,* 75 Cal. App. 9 [241 Pac. 931] ; *People* v. *Hennessey,* 201 Cal. 568 [258 Pac. 49] ; *People* v. *Meadows,* 108 Cal. App. 67 [291 Pac. 226].)

 ▇ Appellant contends that the evidence is insufficient to sustain the convictions under the theft counts because the complaining witness did not rely upon the false representations. The contention is based upon the theory that the prosecution was necessarily for that form of theft described as the obtaining of property by false pretenses and the fact that certain answers were made by the complainants which, standing alone, tend to show that the witnesses did not rely upon the false representations in parting with their money. As to the latter argument it is sufficient to say that, taking the testimony of each of the witnesses as a whole, the evidence amply sustains the conclusion that they would not have parted with their money had they not placed reliance upon the false representations of the appellant.

 ▇ As to the counts under which appellant was convicted of selling securities without a license and in violation of the Corporate Securities Act, it is contended that the contracts received by the complaining witnesses upon the payment of the various sums of money are not "securities" as defined by that act. The act (subd. 7) in declaring what shall be included in the term "security" mentions "investment contract", a term which aptly describes the contract here in question. The term "investment contract" has been judicially defined. In *State* v. *Gopher Tire & Rubber Co.,* 146 Minn. 52 [177 N. W. 937], followed in *State* v. *Evans,* 154 Minn. 95 [27 A. L. R. 1165, 191 N. W. 425], it is held

the certificates issued to purchasers who paid their money in expectation of a profit from the investment might properly be regarded as investment contracts. Appellant here contends that it is the rule that criminal statutes are subject to the rule of strict construction, and that under a strict construction the contracts in question do not come within the provisions of the Corporate Securities Act. Whatever may be the rule elsewhere, in this state the common-law rule that penal statutes are to be strictly construed has no application, and statutes of this state are to be construed according to the fair import of their terms and with a view to effect the object of the statute as well as to promote justice. (Pen. Code, sec. 4; Pol. Code, sec. 4; Civ. Code, sec. 4.) That the contract before us is an investment contract is hardly open to question. Appellant's statement that "the contract does not, within itself, contain any obligation on the part of the promisor to employ the funds in any particular fashion" is contradicted by the phrascology of the document itself and is as unfounded as his statement that the document is merely in the nature of a receipt or the further suggestion that it may have created the relationship of principal and agent. There is no ambiguity or mystery about the writing. It plainly provides that a certain sum of money has been paid to the party of the second part, that this money is to be used only for the purpose of investment and the second party agrees to pay a specified sum on a specified date as principal and earnings for the stated period of time upon the investment.

Appellant next contends that the prosecution was barred by the immunity provision of section 17 (now sec. 23) of the Corporate Securities Act. In brief this section provides that the Commissioner of Corporations shall have power to administer oaths, examine books and papers and business "of any company, broker or agent permitted or authorized by him to sell securities", and "in any examination, audit or investigation made or hearing conducted by him he shall have the power to take the testimony of any witness and to issue subpoenas". The section further provides that no person shall be excused from testifying or producing evidence upon the ground that by so doing he might tend to incriminate himself or subject himself to punishment for a felony or to a penalty or forfeiture; "but

no person shall be prosecuted, punished, or subjected to any penalty or forfeiture for or on account of any act, transaction, matter or thing concerning which he shall have been *so compelled* to testify under oath or to produce such documentary or other evidence''. (Italics ours.) Like authority to conduct examinations and hearings and to take testimony under oath may, under the section, be delegated by the commissioner to a deputy or examiner appointed by him for such purpose, but such appointment must be in writing, signed by the commissioner under his official seal.

At the trial appellant testified that he appeared before a person whom he ''understood at that time was the commissioner'', by whom and another person, whose official capacity is not stated, he was examined. The court sustained objections to the questions which followed, which were as to the subject matter of the examination and whether it concerned the matters upon which appellant was being prosecuted, the objections being properly sustained upon the ground that they called for incomplete testimony and the conclusion of the witness. Appellant's counsel then offered to prove that appellant had testified before the state corporation department with regard to the matters involved in the prosecution, nothing being said in the offer about appellant having been under oath or that he had testified under compulsion, declaring that he desired to make ''the same offer of proof'', to which offer the prosecutor made the same objection, which the court sustained. It should be noted that there was no competent proof prior to what has been recited that appellant had appeared before either the Commissioner of Corporations or a person appointed by such commissioner in writing as required by the section, and at no place does it appear that appellant was ''compelled'' to give any testimony or produce any evidence. At one point in his preliminary testimony appellant did say that he ''was subpoenaed by the Corporation Commissioner of Corporations'', but this later appears to have been merely a conclusion, for appellant under his own counsel's questioning testified as to the matter of subpoena, that he found a subpoena (signed by someone named ''Ellis'') in his office one morning, and that this occasioned his presence at the corporation department. In other words, appellant was never subpoenaed but appeared at the department voluntarily.

Before any evidence of taking of appellant's testimony at the corporation department could become admissible it was necessary that it be made to appear that the giving of such testimony was under the conditions in consequence of which alone an immunity could arise. Appellant testified that the subpoena which he found in his office was "signed as I recall it by Ellis". As there appears no evidence that "Ellis" was authorized either in the manner required by the act or in any other manner to issue the subpoena, or that he was connected officially with the department of corporations, it appears not only that appellant was not subpoenaed but there is no evidence of the existence of any legal subpoena. As appellant was not under compulsion of a subpoena but appeared voluntarily, the case of *People* v. *Schwarz*, 78 Cal. App. 561 [248 Pac. 990], relied upon by appellant, is readily distinguished from the one before us, since in that proceeding the witnesses Frankfort and Goldner were compelled to attend through service of a proper subpoena and gave their testimony over strenuous objections. It is to be noted, however, that the court in the Schwarz case (p. 568) also held that since the witness Weist testified voluntarily, his claim that he was compelled to give evidence was without foundation, leaving the defendant Weist without the protection of the immunity claimed by him. In the case at bar there was neither testimony nor offer of proof to the effect that appellant, when at the department of corporations, claimed the privilege of not giving evidence against himself. "It is apparent, we think, that the law contemplates that the witness claim the privilege of not giving testimony or of not furnishing evidence against himself before he is entitled to the immunity provided for by the statute." (*People* v. *Eiseman*, 78 Cal. App. 223 [248 Pac. 716, 727] ; *People* v. *Doble*, ▮ (Cal. App.) 257 Pac. 81.)

In the absence of a preliminary showing that appellant was compelled to testify or produce evidence before the Commissioner of ·Corporations or his legally delegated examiner or deputy,.evidence of the substance or nature of such evidence was neither competent nor relevant to the issues. The

rulings of the trial court excluding evidence of the nature and subject matter of appellant's testimony before the Commissioner of Corporations were not erroneous. In the absence of proof that appellant was "compelled" to give such testimony, what he said there was inadmissible in the criminal case under the rule excluding hearsay testimony.

Appellant's final assignment of error is that the trial court failed and refused to complete an investigation as to whether one of the jurors had, during the progress of the trial, expressed an opinion on the merits. During the course of the trial defense counsel informed the court, in the absence of the jury, that he had just been informed that one of the jurors in the cause on trial had made a statement to a person then in the courtroom to the effect that the defendant need not expect that he was "going to get off so easy". The court requested counsel to call the witness, whereupon one Reba F. Alexander was called to the stand and testified, not as counsel had declared, but that she had heard from one Helen Holzworth that someone had made the statement that one of the jurors had made the statement to the effect that Mr. White was not going to get off so easy, but that Mrs. Holzworth did not know which juror had made the statement and did not say from whom she had heard the rumor. No further or other proof was submitted by appellant's counsel, who now contends that it was the duty of the court to pursue the inquiry to a conclusion. It appears that Mrs. Holzworth was, at the time the matter was called to the court's attention, confined in a hospital at Santa Monica, California. The court declined to follow the suggestion of appellant's counsel that it proceed to the hospital to question Mrs. Holzworth, but did in turn suggest that either side might see her at that place and that the process of the court was open to either side for that purpose. The court further offered to permit counsel to question the jurors on the subject, but appellant's counsel at no time availed himself thereof; neither does it appear that anyone representing the appellant called upon Mrs. Holzworth at the hospital to get her version of the incident. It does appear, however, that the district attorney sent an investigator and a stenographer, who interviewed Mrs. Holzworth and took shorthand notes of the questions propounded and her answers thereto. The stenographer was sworn as a witness and

testified that Mrs. Holzworth had stated that she knew none of the jurors and had not met or talked with any of them, and did not even know who the jurors were; that she had heard no statement to the effect that a juror had declared in effect that the defendant would be convicted, and that all that she had heard was that her doctor had told her, prior to the beginning of the trial, that he did not think that the jury would let the defendant off after what he had done. The appellant at no time offered any further proof in the matter. It cannot but have been obvious to the court that the rumor of alleged misconduct of a juror was without foundation, and the court, in view of the circumstances, was under no obligation to go further into the matter. Appellant's counsel quite evidently concurred in this view, for when the taking of testimony on this incidental question was concluded the court inquired whether either side had anything further to offer in the matter and counsel for both sides replied that there was nothing. The point is wholly without merit.

The judgment and order denying a new trial are affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 28, 1932.