ANGELINA R. DE ZAPATA ET AL., Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, GUAYAMA PART, ÁNGEL D. MARCHAND PAZ, JUDGE, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. 2110. Argued March 6, 1956.—Decided June 18, 1956.

Francisco Ponsa Feliú for petitioners. José Trías Monge,
Attorney General, and Rafael L. Ydrach Yordán, Fiscal of
the Supreme Court, for intervener.

MR. JUSTICE SIFRE delivered the opinion of the Court.

This is a certiorari proceeding. In the District Court,
Cayey Part, three actions were brought against Angelina R.
de Zapata and two others against her and her husband Jorge
Zapata, petitioners here, for clandestine sale of cigarettes
without the corresponding stamps affixed thereto.[1] Ange-
lina was found guilty and sentenced in all the prosecutions.
Her husband was acquitted in one of the actions and con-
victed and sentenced in the other. The judgments were
affirmed on appeal by the Superior Court, Guayama Part.
We issued the writ to review the proceedings.

The petitioners contended before that court that the
Cayey Part had erred, *first*, "in overruling the defense of

---

[1] Violations of § 16, par. 2, "in connection with § § 32, 57 and 103
of Act No. 85 of August 20, 1925," as subsequently amended.

immunity," *second,* "in weighing the evidence and holding that it is sufficient to destroy the presumption of innocence . . ." and *third,* in imposing "excessive and unreasonable" sentences. The Guayama Court dismissed all these contentions, erroneously in the opinion of the petitioners, and because of this action of the lower court they now pray for the reversal of the judgments.

■■ We shall consider, in the first place, the question raised in connection with the immunity denied them. One of the prosecuting attorneys of the Department of Justice was carrying on an investigation in Cayey of the sale of Army cigarettes to which the internal revenue stamps had not been affixed. He summoned Angelina Zapata, pursuant to the provisions of § § 407 and 408 of the Code of Criminal Procedure, to appear before him as a witness. He summoned Jorge Zapata verbally "through Mr. Lizardi, a member of the C. I. D." to appear as a witness. Both appeared before him and testified. Jorge stated that he was a soldier, an Army sergeant stationed at Henry Barracks, in Cayey, and belonging to the "Hq & Hq Detachment 7564 AU," and that Angelina R. de Zapata was his wife. The prosecuting attorney then told him: ". . . you are advised that, as you already know, I am prosecuting attorney Manuel Vera Mercado, of the Department of Justice, and I am investigating a violation of the Internal Revenue Act in connection with the illegal sale of Army cigarettes bearing no internal revenue stamps and that I have evidence to file a complaint against you in a criminal cause, that is, to file an information against you. And once you are warned, I ask you if you want to continue testifying voluntarily, that is, if your testimony is voluntary." To that Zapata answered that all his statements had been voluntary and that the same held for everything that he would say thereafter. He continued testifying and denied that he and his wife had sold cigarettes

on any of the dates mentioned by the prosecuting attorney or at any other time.

Angelina gave her name saying that her other name was Zapata. After the prosecuting attorney made the same warnings he made to Jorge, she stated that neither she nor Jorge had sold cigarettes without internal revenue stamps affixed thereto.

The petitioners allege that upon giving the testimony to which we have referred, they were covered by the immunity granted by Act No. 13 of April 9, 1941 (Sess. Laws, p. 346),[2] and that the Guayama Court erred in holding otherwise, on the basis that pursuant to that statute, to be entitled to immunity the witness must give the State something in exchange, namely, to incriminate himself, and that in the case at bar the Zapatas gave nothing, since in their testimony there was no self-incrimination.

In discussing the error assigned, the petitioners ask the following question: "Is it essential that the witness incriminate himself to obtain immunity?" After stating that they

---

[2] Section 1 of Act No. 13 of April 9, 1941, repealed by Act No. 3 of May 18, 1954, reads:

"Section 1.—No person shall be prosecuted, punished, or have his property confiscated for testifying or for offering any kind of evidence in a criminal proceeding, process, or investigation, and such immunity shall cover the declarant not only concerning the testimony given by him in regard to the crime being investigated, but also concerning any liability he may have incurred in regard to other crimes; and every person shall be obliged to appear or to testify before a prosecuting attorney, municipal judge, or justice of the peace when said officials summon him as a witness in an investigation being made by them; *Provided,* That refusal to appear or to testify shall constitute contempt which shall be punished by the district court of the judicial district where the summons was issued, or where the witness refuses to testify, on complaint filed in said court by the officer in charge of the investigation, in a summary proceeding in which the defendant shall have two days to answer said

are doubtful "as to what should be the answer" they state that "The question has not been specifically decided in Puerto Rico. . . ." We disagree. It was decided in the case of *Batalla* v. *District Court*, 74 P.R.R. 266. There we stated that "The situation which the Legislative Assembly . . . intended to remedy by the approval of Act No. 13, was undoubtedly, . . . : to furnish a means to compel a witness summoned in a proceeding, prosecution or investigation, to give testimony against a defendant, granting said witness, in return for his testimony, absolute immunity *if the testimony should incriminate him.*" (Italics ours.) This construction was again repeated in the case of *People* v. *Vázquez*, 77 P.R.R. 885 (1955). In that case we held the following: "Appellant . . . was not deprived of his privilege against self-incrimination. His statements to the prosecuting attorney in no way incriminated him. The written statement introduced in evidence, even if it had been sworn to, did not incriminate him either. This testimony does not reveal the elements of the crime, nor the sources or means by which the prosecuting attorney could have obtained evidence of its commission or evidence connecting the defendant with the crime. *Batalla* v. *District Court, supra; Counselman* v. *Hitchcock*, 142 U. S. 547. Under these circumstances, the appellant cannot plead successfully that he was covered by the immunity granted by Act No. 13." We reached that same conclusion in *People* v. *Ortiz*, 78 P.R.R. 803 (1955).

█ The petitioners urge that even if in order to enjoy the right to immunity granted by Act No. 13 of April 9, 1941, the witness were required to incriminate himself, they

---

complaint, making such allegations as he may deem pertinent. The hearing shall be held within the five (5) days following the answer of the defendant."

could not be denied that right because they actually incriminated themselves. There is no need to decide whether Jorge Zapata was a witness against himself when he testified, in view of the fact that he testified, as the respondent correctly states in his brief, without a subpoena. He did not testify under compulsion. *Batalla* v. *District Court, supra; People* v. *Ortiz, supra.*[3]

██ Insofar as Angelina is concerned, we are fully convinced that the conclusion of the Superior Court, Guayama Part, to the effect that she did not incriminate herself is correct. All she testified was that her last name is Zapata, her husband's, and that neither he nor she had sold cigarettes without internal revenue stamps affixed thereto. The petitioners' contention is that the prosecuting attorney was investigating the sale of Army cigarettes in Cayey; that Zapata testified that he was an Army sergeant stationed at Henry Barracks, located in the outskirts of the town, that "he worked in the Commissary, precisely the place" in said headquarters "where all the Army commodities are stored, *including the cigarettes bearing no stamps* under investigation by the prosecuting attorney," the "Commissary being . . . the *only place* near Cayey where those cigarettes could be obtained," and that Angelina incriminated herself upon testifying that she was Jorge's wife because this state-

---

[3] "Furthermore, assuming that the testimony tended to incriminate him, the defense of immunity did not lie. Appellant appeared before the prosecuting attorney at the request of a detective and voluntarily gave testimony before that officer against Sadoth Morales, but not in obedience to a subpoena. He cannot allege that he did so under compulsion. Act No. 13 of April 9, 1941. We agree with the *Fiscal* of this Court that under the provisions of § 1 of this Act a formal and valid subpoena is required to compel a witness to testify, pursuant to § 407 *et seq.* of the Code of Criminal Procedure of Puerto Rico which regulate the compulsory appearance of witnesses at an investigation conducted by the prosecuting attorney. In the absence of a subpoena, the appearance of a witness to testify, as is the case here, would be voluntary under the law and his testimony may be used in any suit against him. *People* v. *Eiseman, et al.,* 78 Cal. App. 223; 248 Pac. 716; *People* v. *White,* 124 Cal. App. 548; *Bowles* v. *Chu Mang Poo,* 58 F. Supp. 841; *Sherwin* v. *United States,* 268 U. S. 369; *People* v. *White,* 12 P. 2d 1078; 145 A.L.R. 1416."

ment established the bond between them and also "an essential and indispensable element of the offenses charged, namely, defendant's access to the cigarettes sold." We have already copied Zapata's testimony. He did not say that he worked in the Commissary or that as a sergeant he had the cigarettes under his control. Actually, although the evidence introduced at the trial showed that the cigarettes sold belonged to the Army, it did not reveal that they came from Henry Barracks. The fact that it appeared from Angelina's testimony that she was the wife of Jorge Zapata simply established the legitimate relation of husband and wife existing between petitioners. Even if the privilege against self-incrimination must be construed liberally, *Hoffman* v. *United States*, 341 U. S. 479, we cannot subscribe to the opinion that Angelina incriminated herself because it appears from her testimony that she was Jorge's wife.[4] She furnished no evidence to the Government in exchange for the immunity claimed.

Petitioners allege, calling our attention to the ruling in *Maffie* v. *United States*, 209 F. 2d 225, that the prosecuting attorney Vera Mercado informed them that he had evidence for filing an information against them and the aforesaid case states "clearly the position of preference of a person who has been summoned as a witness, but who is under suspicion as a possible participant in the offenses under inves-

---

[4] The intervener contends that although Angelina R. de Zapata was summoned as a witness, when she appeared to testify, the prosecuting attorney "already had evidence to file a criminal action against her," and that "she was relieved from the compulsoriness of the summons when the prosecuting attorney gave the following warning," referring to a warning similar to that made to Jorge Zapata, for which reason, in his opinion, she was not examined "as the witness who is compelled to testify by virtue of the summons issued" and that therefore, she gave voluntary testimony not being therefore entitled to immunity. We do not agree with that contention. The witness, before being warned, had stated that her last name "is Zapata, her husband's" referring undoubtedly to her husband Jorge. In any event, the question is unimportant in view of the conclusion that because Angelina had not incriminated herself, she is not entitled to the immunity granted by Act No. 13 of April 9, 1941.

tigation," "condition of preference" which consists, according to petitioners, in that the witness has perfect right to "*keep silent altogether.*" That question has no bearing in the case at bar. The Zapatas testified, and precisely because they did, they now claim the right to immunity.

■ In the second assignment of error it is alleged that the evidence for the prosecution is insufficient "to destroy the presumption of innocence beyond reasonable doubt," and to sentence Jorge Zapata, for having sold and transferred together with his wife Angelina, Army cigarettes bearing no internal revenue stamps. His contention is that the evidence is insufficient as a matter of law to prove the offense charged, because the elements of a "sale" had not been established. The assignment, in our opinion, is entirely without merit. The witness Ramón I. La Puerta Hernández testified, among other things, that he is an Internal Revenue agent and that he knew the defendants. After referring to a sale of cigarettes bearing no stamps which Angelina sold him on two former occasions, he stated that on February 7, 1953, he went to the Zapatas' house with the witness Ramón Luis Rivera, and that they entered the house as they customarily did, Angelina having told them to wait until she came back; that five or six minutes later she returned carrying with her some packages which she put on the dining-room table and "spread them there"; that the witness walked to the table and started counting the cigarettes when Jorge Zapata arrived with a carton of beer which he also put on the table, and began "to count with us also"; that after counting the cigarettes, 31 cartons, he paid Jorge Zapata, the latter taking the money and giving him "the change"; that the payment was made to Zapata for the cigarettes which the witness had purchased, after which he and his companion took the cigarettes and left; that Jorge Zapata was the one who sold them the cigarettes on that day; that they were "Camels and that they also had Chesterfields, without the internal revenue stamps, that is, with the yellow

stamps"; that on other occasions he had visited the Zapata house and bought cigarettes.

Ramón Luis Rivera testified that he is an Internal Revenue agent and that he knew the defendants; that on February 7, 1953, he accompanied La Puerta to the defendant's house and that when they arrived Angelina told them to come in and wait for her, which they did, taking seats in the living room. Shortly thereafter, Angelina returned with a box and a paper bag containing Army cigarettes which she spread on the dining-room table, that Jorge Zapata arrived then with a carton of beer, and helped to count the cigarettes; that La Puerta paid Zapata for the cigarettes which they bought that day, Army cigarettes with a yellow stamp and bearing no internal revenue stamps.

The evidence set forth is sufficient to support the judgment rendered against Jorge Zapata.

■ It is alleged in the last assignment that "the sentences imposed are excessive and unreasonable." Angelina R. de Zapata was sentenced in each of the prosecutions to pay a fine of $200, or in default thereof, to one day in jail for each dollar left unpaid, the subsidiary imprisonment not to exceed 90 days in each case. Jorge Zapata was sentenced to $500 fine, or in default, to one day in jail for each dollar left unpaid, the subsidiary imprisonment not to exceed 90 days. The penalty provided by the Internal Revenue Act for the violations in issue is "a fine of not less than one hundred (100) nor more than one thousand (1,000) dollars, or to imprisonment in jail for a minimum term of thirty (30) days and a maximum term of one (1) year; and for the second and each subsequent violation, both penalties, fine and imprisonment, shall be imposed." There is nothing in the record to justify petitioners' contention, whereby the assignment will not prosper.

The writ issued will be quashed.

Mr. Justice Negrón Fernández concurs in the result.