ANGELINA R. DE ZAPATA y JORGE ZAPATA, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE GUAYAMA, HON. ÁNGEL D. MARCHAND PAZ, JUEZ, demandado; PUEBLO DE PUERTO RICO, interventor.

Número 2110.
*Sometido:* 6 de marzo de 1956. *Resuelto:* 18 de junio de 1956.

*Francisco Ponsa Feliú,* abogado de los peticionarios; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogados de El Pueblo, interventor.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

Se trata de un recurso de *certiorari.* En el Tribunal de Distrito, Sala de Cayey, se iniciaron tres causas contra Angelina R. de Zapata y dos contra ella y su esposo Jorge Zapata, los aquí recurrentes, por ventas clandestinas de cigarrillos sin los correspondientes sellos de Rentas Internas. (1) La primera fué declarada culpable y sentenciada en todos los procesos. El segundo fué absuelto en uno de los incoados en su contra y convicto y sentenciado en el otro. Las sentencias fueron confirmadas en apelación por el Tribunal Su-

---

(1) Violaciones de la sección 16, inciso 2, "en relación con las secciones 32, 57 y 103 de la Ley núm. 85 de 20 de agosto de 1925", según fué enmendada posteriormente.

perior, Sala de Guayama.   Expedimos el auto para revisar los procedimientos.

Los recurrentes sostuvieron ante dicho tribunal que la Sala de Cayey, había errado, *primero*, "al declarar sin lugar la defensa de inmunidad", *segundo*, "al apreciar la evidencia y al resolver que la misma es suficiente para destruir la presunción de inocencia....", y *tercero*, al imponerles penas, "excesivas e irrazonables".   Todas esas contenciones fueron desestimadas, erróneamente a juicio de dichos recurrentes, y en ello se basan para pedir que revoquemos las sentencias.

█ █ Consideraremos en primer término, la cuestión que suscitan con respecto a la inmunidad que les fué negada.   Uno de los fiscales del Departamento de Justicia estaba investigando en el pueblo de Cayey ciertas ventas de cigarrillos del ejército hechas sin que se hubieran pagado los derechos de Rentas Internas.   Citó a Angelina R. de Zapata, de acuerdo con las disposiciones de los arts. 407 y 408 del Código de Enjuiciamiento Criminal, para que compareciera a declarar ante él como testigo.   Llamó a Jorge Zapata mediante requerimiento verbal "a través del Sr. Lizardi, miembro del C.I.D.", para que también prestara declaración.   Comparecieron los dos ante dicho funcionario y testificaron.   Jorge manifestó que era militar, sargento del ejército, destacado en Cayey, en el Cuartel Henry, y que pertenecía a la organización "Hq & Hq Detachment 7564 AU", y que Angelina R. de Zapata era su esposa.   El Fiscal le dijo entonces: "....yo quiero advertirle como ya usted sabe, que soy el fiscal Manuel Vera Mercado, del Departamento de Justicia, que investigo una infracción a la Ley de Rentas Internas en relación con la venta ilegal de cigarrillos del ejército sin sellos de rentas internas y que tengo prueba para actuar legalmente contra usted en una causa criminal, o sea, para radicar denuncias o acusaciones.   Y una vez advertido de esto, yo le pregunto a usted si quiere continuar declarando voluntariamente, es decir, si su declaración es

voluntaria". A ello contestó Zapata que todo cuanto había dicho lo había expuesto voluntariamente y que lo mismo haría en cuanto a lo que manifestara de ahí en adelante. Continuó testificando, y negó que él y su esposa hubieran vendido cigarrillos en ninguna de las fechas que mencionó el fiscal, ni en ninguna otra ocasión.

Angelina dió su nombre y dijo que su otro apellido era Zapata. Después de hacerle el fiscal las mismas advertencias que hiciera a Jorge, manifestó que ni éste ni ella habían vendido cigarrillos sin sellos de Rentas Internas.

Sostienen los recurrentes que al prestar la declaración a que hemos aludido, quedaron protegidos por la inmunidad que concedía la Ley núm. 13 de 9 de abril de 1941,[2] y que incidió en error el Tribunal Superior, Sala de Guayama, al resolver lo contrario, basándose en que de acuerdo con dicho estatuto, para que un testigo tuviera derecho a la inmunidad, debía dar al Estado algo en cambio de aquélla, esto es, incriminarse, y que en el caso de autos los esposos Zapata no dieron nada, en vista de que no se autoincriminaron al testificar.

Al discutir el error apuntado, hacen dichos recurrentes la siguiente pregunta: "¿Es necesario que el testigo se in-

---

[2] La sec. 1 de la Ley núm. 13 de 9 de abril de 1941, derogada por la núm. 3 de 18 de marzo de 1954, leía así:

"Sección 1.—Ninguna persona será procesada, castigada o confiscados sus bienes por testificar o producir evidencia de cualquier clase en un procedimiento, proceso o investigación criminal, y tal inmunidad cubrirá al declarante no sólo en lo declarado por él acerca del delito que se investigue, sino en relación con cualquier responsabilidad en que pudiera haber incurrido con respecto a otros delitos; y toda persona estará obligada a comparecer o declarar ante un fiscal, juez municipal o de paz, cuando éstos la citaren como testigo en una investigación que estuvieren practicando dichos funcionarios; Disponiéndose, que la negativa a comparecer o declarar constituirá desacato, que será castigado por la corte de distrito del distrito judicial donde hubiese tenido lugar la citación, o donde el testigo se niegue a declarar, mediante querella presentada ante dicha corte por el funcionario encargado de la investigación, en un procedimiento sumario en el que el querellado tendrá dos días para contestar dicha querella, formulando alegaciones que estimare pertinentes, debiendo ventilarse la vista dentro de los cinco (5) días siguientes a la contestación del querellado."

crimine para obtener inmunidad?" Después de manifestar que tienen dudas "sobre cuál debe ser la respuesta" exponen que "La cuestión no ha sido resuelta específicamente en Puerto Rico, . . .". Discrepamos. Lo fué en *Batalla* v. *Tribunal de Distrito*, 74 D.P.R. 289. Dijimos allí que "La situación que tendió a remediar la Asamblea Legislativa. . . con la aprobación de la Ley núm. 13 fué, indudablemente, . . . ; proporcionar un medio para obligar a un testigo citado en un procedimiento, proceso o en una investigación que se estuviere practicando, a dar testimonio contra un acusado, concediendo a dicho testigo, a cambio de su declaración, inmunidad absoluta *si ésta resultare incriminatoria para él*". (Bastardillas nuestras.) Esa interpretación de la ley fué reiterada en *Pueblo* v. *Vázquez*, 77 D.P.R. 933 (1955). En ese caso expusimos lo siguiente: "Al apelante. . .no se le privó de su privilegio contra la autoincriminación. Lo que él manifestó al fiscal en nada le incriminaba. La declaración escrita presentada en evidencia, aun cuando estuviera jurada, tampoco le incrimina. Su testimonio no revela los elementos del delito ni las fuentes o los medios por los cuales el fiscal pudiera haber obtenido la evidencia de su comisión o evidencia que conectara al acusado con el delito. *Batalla* v. *Tribunal de Distrito*, supra; *Counselman* v. *Hitchcock*, 142 U.S. 547. Bajo esas circunstancias el apelante no puede alegar con éxito que él estaba cubierto por la inmunidad concedida por la Ley núm. 13". A igual conclusión llegamos en *Pueblo* v. *Ortiz*, 78 D.P.R. 843 (1955).

■ Arguyen los recurrentes que aun cuando para gozar del derecho a la inmunidad concedida por la ley núm. 13 de 9 de abril de 1941 fuera requisito que el testigo se incriminara, a ellos no podría negársele ese derecho porque en efecto se autoincriminaron. No hay necesidad alguna de resolver si Jorge Zapata se incriminó al prestar declaración, en vista de que testificó, como acertadamente nos dice el recurrido en su alegato, sin que mediara una citación formal.

No declaró bajo compulsión. *Batalla* v. *Tribunal de Distrito*, supra; *Pueblo* v. *Ortiz*, supra.(³)

█ █ En lo que respecta a Angelina, estamos plenamente convencidos de que es correcta la conclusión del Tribunal Superior, Sala de Guayama, en el sentido de que no se autoincriminó. Todo lo que declaró fué, como se ha visto, que su apellido era Zapata, el del esposo, y que ni éste ni ella habían vendido cigarrillos sin sellos de rentas internas. La contención de los recurrentes es que el fiscal investigaba ventas de cigarrillos del ejército efectuadas en las cercanías del pueblo de Cayey; que Zapata testificó que era sargento del ejército, estacionado en el Cuartel Henry, situado en las inmediaciones de dicho pueblo, "asignado a la Comisaría, que es precisamente el sitio", en dicho cuartel, "donde están almacenados todos los artículos de consumo del Ejército, *incluyendo los cigarrillos sin sellos de rentas internas cancelados* objeto de la investigación del fiscal", siendo la referida "Comisaría . . . el *único sitio* cercano a Cayey donde podían obtenerse dichos cigarrillos", y que Angelina se incriminó al testificar que era esposa de Jorge, porque con ello quedó demostrado el nexo que les unía y establecido "un elemento esencial e indispensable de los delitos imputados, a

(³) "Por otra razón, en el supuesto de que la declaración le incriminara, no procedía la defensa de inmunidad. El apelante compareció ante el fiscal a invitación de un detective y prestó voluntariamente ante aquel funcionario la aludida declaración contra Sadoth Morales pero no lo hizo obedeciendo a una citación formal. Él no puede alegar que lo hizo bajo compulsión. Ley núm. 13 de 9 de abril de 1941. Convenimos con el fiscal de esta Corte en que bajo los términos de la sec. 1ra. de esta Ley para que un testigo venga obligado a declarar es indispensable que medie una citación formal y válida—*subpoena*—en armonía con los arts. 407 y siguientes del Código de Enjuiciamiento Criminal de Puerto Rico que regulan la comparecencia obligatoria de testigos a una investigación fiscal. De no mediar tal citación, cualquier comparecencia de un testigo a declarar—como ocurrió en este caso—resultaría voluntaria ante la Ley, pudiendo utilizarse lo declarado en cualquier proceso contra el declarante. *People* v. *Eiseman et al.*, 78 Cal. App. 223, 248 Pac. 716; *People* v. *White*, 124 Cal. App. 548; *Bowles* v. *Chu Mang Poo*, 58 F.Supp. 841; *Sherwin* v. *United States*, 268 U. S. 369; *People* v. *White*, 12 P.2d 1078; 145 A.L. R. 1416."

saber, el acceso de parte de la acusada a los cigarrillos vendidos". Ya hemos dicho lo que testificó Zapata. No dijo que trabajara en la Comisaría, ni que como sargento tuviera cigarrillos bajo su control o dominio. La realidad es que aunque la prueba presentada en el juicio de la causa demostró que los cigarrillos vendidos eran del ejército, no reveló que procedieran del Cuartel Henry. El hecho de que de la declaración de Angelina se desprendiera que era esposa de Jorge Zapata, simplemente puso de manifiesto la relación legítima de marido y mujer existente entre los recurrentes. Aun cuando el privilegio contra la. autoincriminación debe ser interpretado liberalmente, *Hoffman* v. *United States*, 341 U.S. 479, no podemos participar del criterio de que se incriminó Angelina porque apareciera de su testimonio que era esposa de Jorge.(⁴) No dió nada al Estado a cambio de la inmunidad que reclama.

Se nos dice por los recurrentes, llamando. nuestra atención a lo resuelto en *Maffie* v. *United States*, 209 F.2d. 225, que el fiscal Vera Mercado les informó que tenía prueba para denunciarles y que en el caso arriba citado se expone con "claridad la posición preferente en que se encuentra una persona que ha sido citada a declarar como testigo, pero que se halla bajo sospecha, como posible participante en los delitos bajo investigación", "condición preferente" que consiste, según los recurrentes, en que el testigo tiene perfecto

---

(⁴) Sostiene el interventor que aunque Angelina R. de Zapata fué citada formalmente como testigo, cuando compareció a declarar ya el fiscal "contaba con pruebas para proceder criminalmente en su contra", y que "fué relevada de la compulsoriedad de la citación al hacer el fiscal la siguiente advertencia", refiriéndose a una advertencia similar a la que fué hecha a Jorge Zapata, por lo que, según su criterio, Angelina no fué interrogada "como la testigo que venía compelida a declarar a virtud de la citación expedídale", y que por tanto testificó voluntariamente no teniendo por tal razón derecho a la inmunidad. No estamos de acuerdo con esa contención. La testigo, antes de que se le hiciera la advertencia, había manifestado que su apellido era "el de él, Zapata", aludiendo indudablemente a su esposo Jorge. De todos modos, la cuestión carece de importancia en vista de la conclusión de que Angelina, por no haberse incriminado, no tiene derecho a la inmunidad que concedía la Ley núm. 13 de 9 de abril de 1941.

derecho *"a guardar absoluto silencio"*.   No tiene esa cuestión importancia alguna en el caso de autos.   Los esposos Zapata declararon, y precisamente por haberlo hecho es que reclaman el derecho a la inmunidad.

En el segundo señalamiento se sostiene que la evidencia presentada por el ministerio fiscal es insuficiente "para destruir la presunción de inocencia más allá de duda razonable", y condenar a Jorge Zapata, por haber vendido y traspasado, juntamente con su esposa Angelina, cigarrillos del ejército, sin que se hubieran pagado los derechos de rentas internas.   La contención de dicho recurrente es que la prueba fué insuficiente como cuestión de derecho para probar el delito imputádole, por no haberse establecido los elementos de una "compraventa".   El señalamiento está a nuestro juicio totalmente desprovisto de méritos.   El testigo Ramón I. La Puerta Hernández, declaró entre otros particulares, que era agente de Rentas Internas y conocía a los dos encausados.   Después de referirse a ventas de cigarrillos sin sellos de rentas internas héchasle por Angelina en ocasiones anteriores, manifestó que el día 7 de febrero de 1953 estuvo en la casa de los esposos Zapata con el testigo Ramón Luis Rivera, y que entraron en ella como acostumbraban hacer, diciéndoles Angelina que esperaran un ratito en lo que volvía, regresando a los cinco o seis minutos, trayendo consigo unos paquetes que puso en la mesa del comedor y los "derramó allí"; que el testigo se acercó, empezando a contar los cigarrillos y en ese momento llegó Jorge Zapata, quien traía una caja de cerveza, la que colocó también sobre la mesa, comenzando "a contar también con nosotros"; que luego de contar los cigarrillos, 31 cartones, él le pagó a Jorge Zapata, cogiendo Zapata el dinero y devolviendo "el vuelto", pago que le fué hecho a Zapata por los cigarrillos que el testigo había comprado, luego de lo cual él y su compañero cogieron los cigarrillos y se los llevaron; que ese día la compra se la hizo a Jorge Zapata; que los cigarrillos eran "marca Camel, y había marca Chesterfield, sin sellos de Rentas In-

ternas o sea con sellos amarillos"; que en otras ocasiones había visitado la casa de los Zapata y comprado cigarrillos.

Ramón Luis Rivera depuso que era agente de Rentas Internas y que conocía a los acusados; que el día 7 de febrero de 1953 acompañó a La Puerta a la residencia de los procesados y que cuando llegaron les dijo Angelina que entraran y la esperaran, lo que hicieron, sentándose en la sala. Poco tiempo después volvió Angelina con una caja de cartón y una funda de papel que contenía cigarrillos del ejército, que derramó sobre la mesa del comedor, llegando en ese momento Jorge Zapata con una caja de cerveza, ayudando a contar los cigarrillos; que La Puerta pagó a Zapata por los cigarrillos que le compraron en esa fecha, cigarrillos que eran del ejército con sello amarillo y sin tener sellos de rentas internas.

La evidencia reseñada es suficiente para sostener la sentencia pronunciada en contra de Jorge Zapata.

■ Se alega en el último apuntamiento que "las sentencias impuestas son excesivas e irrazonables". Angelina R. de Zapata fué condenada en cada uno de los procesos iniciados en su contra, al pago de una multa de $200, o en su defecto, a un día de cárcel por cada dólar que dejare de satisfacer, sin que excediera la prisión subsidiaria de 90 días en cada caso. Jorge Zapata fué sentenciado a $500 de multa, o en su defecto, a un día de cárcel por cada dólar que dejare de pagar, sin que excediera la prisión subsidiaria de 90 días. La pena prescrita en la Ley de Rentas Internas para las infracciones que fueron objeto de los procesos es la de "multa no menor de cien (100) ni mayor de mil (1,000) dólares o cárcel por un término mínimo de treinta días y máximo de un año; y por la segunda y cada infracción subsiguiente, ambas penas, multa y cárcel". No hay nada en los autos que justifique la aseveración que hacen los recurrentes, por lo que el señalamiento no debe prosperar.

*Se anula el auto expedido.*

El Juez Asociado Sr. Negrón Fernández concurre con el resultado.